Bernice JONES, Plaintiff,

v.

NORTH AMERICAN AERODYNAMICS, INC., et al., Defendants.

Civ. No. 81–0007–B.

United States District Court, D. Maine.

Oct. 4, 1984.

---

Barry K. Mills, Ellsworth, Me., for plaintiff.

Howard H. Dana, Jr., Portland, Me., for North American Aerodynamics.

Peter W. Culley, Portland, Me., for West Point-Pepperell, Inc.

## MEMORANDUM AND ORDER ACCEPTING RECOMMENDATION OF MAGISTRATE

CYR, Chief Judge.

The plaintiff brings this action for injuries allegedly sustained when her jumpsuit ignited as portions of her parachuting equipment came in contact with electrical power lines during the course of a parachute jump in Louisiana. The complaint alleges that the jumpsuit fabric was defective and unreasonably dangerous, and that defendants failed to give adequate warning of the dangerous characteristics of the fabric. North American Aerodynamics, Inc. (NAA), the alleged manufacturer of the jumpsuit, moved for dismissal for lack of personal jurisdiction. On March 28, 1984, the United States Magistrate issued a report recommending that the motion to dismiss be granted. The plaintiff objected.

The material facts are undisputed. Born and raised in Maine, plaintiff moved to Louisiana in 1973 where she resided until 1978, when she returned to Maine. She purchased her parachuting equipment in 1974 or 1975 through a mail order catalog retailer located in Illinois or Texas. The accident occurred on April 5, 1975 in Louisiana. NAA is incorporated and has its principal place of business in New Jersey. It has no employees in Maine and no Maine stores sell its products. The only advertising entering Maine is that contained in three nationally circulated parachuting magazines. NAA published its own catalog in 1972, 1974 and 1976 (at least one of these catalog issues was intended for nationwide distribution) and has retailed its products through its own catalogs and through other mail order retailers. During the ten-year period from 1971 to 1980, NAA shipped $2,400 worth of goods into Maine, out of a total volume of between 1.5 and 1.7 million dollars in sales made through its own catalog. NAA shipments to Maine through its own catalog sales

never exceeded $750 per year; on 33 occasions, extending over a ten-year period, it mailed goods into Maine in furtherance of its own catalog sales. These data do not cover any Maine sales of NAA products which may have occurred through other mail order retailers; the record contains no evidence as to whether there were any such sales in Maine, though total nationwide sales through such retailers between 1971 and 1980 exceeded 1.1 million dollars.

The plaintiff's injuries were incurred in Louisiana. She received medical and psychiatric treatment in Louisiana; she has required further medical and psychiatric treatment since moving to Maine.

Plaintiff commenced this action on January 13, 1981 and for purposes of this motion it is agreed that her decision to return from Louisiana to Maine was not motivated by "forum shopping." "Certification To The Supreme Judicial Court" (pleading No. 35), at ¶ 17.

 The exercise of personal jurisdiction over NAA must be authorized by Maine law and conform with federal due process. *Wass v. American Safety Equipment Corp.*, 573 F.Supp. 39, 42 n. 7 (D.Me. 1983). The limits of personal jurisdiction under Maine law are coextensive with the federal due process requirements. *See Architectural Woodcraft Co. v. Read*, 464 A.2d 210, 212 (Me.1983); *Labbe v. Nissen Corp.*, 404 A.2d 564, 569 (Me.1979).

> Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278] (1940). When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential

foundation of *in personam* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204 [97 S.Ct. 2569, 2579, 53 L.Ed.2d 683] (1977).

> Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485] (1952).

*Helicopteros Nacionales de Colombia v. Hall*, —— U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) [footnotes omitted].

*Helicopteros* and earlier Supreme Court decisions prescribe a three-step analysis. First, the defendant must have some contact with the forum state; if it does not, due process prohibits the exercise of *in personam* jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). If the defendant has forum contacts, the court must proceed to the second step in its analysis: whether the suit arises out of or is related to defendant's forum contacts? The answer to this question determines the test to be applied in the third step of the analysis. If the suit arises out of or relates to the defendant's forum contacts, the critical question becomes whether the relationship among the defendant, the forum and the litigation forms a fair and reasonable foundation for the exercise of jurisdiction over the defendant. But if the cause of action does not arise out of and is not related to the defendant's forum contacts, the court considers only the relationship between the forum state and the foreign defendant. In such a case, *Helicopteros* seems to hold that the exercise of personal jurisdiction is appropriate only if the defendant has "continuous and systematic general business contacts" with the forum state. *Id.* —— U.S. at ——, 104 S.Ct. at 1873.

The Magistrate concluded that plaintiff's cause of action does not arise out of and

that it bears no relation to defendant's forum contacts. Report And Recommended Decision, etc., at 3–4. The Magistrate therefore turned his attention to whether the defendant "has carried on continuous and systematic, although unrelated, activities in the state," *id.*, concluding that defendant had not done so and, therefore, recommending that the motion to dismiss be granted.

Although the basis for plaintiff's objection to the Magistrate's report are not entirely clear, she seems to contend that the Magistrate erred in three respects. First, plaintiff contends that the Magistrate ignored some of defendant's forum contacts. Second, she seems to contend that the cause of action is "related to" defendant's forum contacts.[1] Third, plaintiff argues that the Magistrate gave insufficient consideration to plaintiff's status as a Maine resident.

The determination as to whether plaintiff's cause of action is related to the defendant's forum contacts determines the relevance and significance of the other factors which plaintiff contends deserve closer consideration. Therefore, the Court starts with the second of plaintiff's three objections.

The essence of plaintiff's second objection appears to be that her action is related to defendant's contacts with Maine because the cause of action arises out of the sale of the same type of equipment which defendant offered for sale and sold throughout the nation, including Maine. This argument is not entirely without persuasive merit.

■ The protection against inconvenient litigation [afforded by the due process clause] is typically described in terms of 'reasonableness' or 'fairness.' " *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). It follows from this concern for fairness and reasonableness that the due process standard for determining the appropriateness of exercising *in personam* jurisdiction should be "flexible," *id.* at 294, 100 S.Ct. at 565, and that it may require judicial consideration of a number of different factors, *see id.* Furthermore, the due process limitations on the exercise of *in personam* jurisdiction are designed to "give[ ] a degree of predictability to the legal system that allows defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Both of these concerns would appear to be well served by plaintiff's interpretation of the relatedness requirement. Certainly, NAA cannot be said to have structured its primary activity so as to avoid being haled into court in this forum. Indeed, NAA's commercial conduct directed at Maine, i.e., advertising for sale and selling its skydiving equipment in Maine, has rendered reasonably foreseeable precisely the kind of suit which it now finds itself defending.

On the other hand, a yet broader interpretation of the relatedness doctrine would promote greater flexibility. The standard applied at the third step in the due process analysis depends on whether the cause of action is related to the defendant's forum contacts. And, as noted above, upon reaching the third step in the analysis more and different factors will be considered if, at the second step in the analysis, the cause of action has been found to be related to the defendant's forum contacts. Hence, greater analytical flexibility obtains once a cause of action is determined to have arisen from or to have been related to the defendant's forum contacts.[2]

Finally, the case law provides some support for a liberal interpretation of the relat-

---

1. Plaintiff's entire discussion of this issue appears at page 4 of her "Memorandum Of Law In Support Of Objections To Magistrate's Report And Recommended Decision," where she argues that, "while plaintiff's cause of action does not arise out of NAA's business activities in Maine, her action does arise out of the same kind of activity which NAA does conduct in Maine."

2. In *Glater v. Eli Lilly Co.*, 744 F.2d 213 (1st Cir.1984), discussed at some length at pp. 661–663 *infra*, the First Circuit seems to suggest that a broad interpretation of the relatedness doc-

edness requirement. Although the Supreme Court recently "decline[d] to reach the question[ ] ... whether the terms 'arising out of' and 'related to' describe different connections between a cause of action and a defendant's contacts with a forum," *Helicopteros Nacionales de Colombia v. Hall*, —— U.S. at —— n. 9, 104 S.Ct. at 1872 n. 9, the fact that the disjunctive reference to these two standards has endured for nearly 40 years, *see International Shoe Co. v. Washington*, 326 U.S. at 319, 66 S.Ct. at 159,[3] may suggest that these terms do indeed "describe different connections." Treating a cause of action which arises from a defendant's nationwide distribution of goods as being "related" to the distribution of those same goods in each state where they are distributed would be consistent with the fact that, in response to the "increase[d] nationalization of commerce," *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the Supreme Court has enhanced the flexibility of due process limitations on the exercise of personal jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1237–38, 2 L.Ed.2d 1283 (1958). Indeed, in *World-Wide Volkswagen* the Court said that "[t]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corpora-

tion that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297–98, 100 S.Ct. at 567. Finally, in *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886 (1st Cir.1977), the First Circuit seemed to embrace a broad interpretation of the relatedness doctrine. Vencedor, a Puerto Rican corporation, brought suit in Puerto Rico against an Ohio corporation, alleging that it had ordered nickel alloy augers from the Ohio Corporation, but that it had received chrome alloy augers instead. In upholding the district court's exercise of jurisdiction over the defendant, the First Circuit explained,

> [w]hen a cause of action arises from the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts. *Id.* In this case, one of Gougler's contacts with Puerto Rico is its sale of the disputed augers to Vencedor. Gougler's other sales to Vencedor, *and its sales of parts and extruders to other Puerto Rican companies, are also 'related' to the present cause of action.*

*Id.* at 889. (*Emphasis supplied.*)

■ Although the plaintiff's argument has merit, in the Court's view it is foreclos-

---

trine might restrict the Court's flexibility. In holding that a defendant's marketing of DES in New Hampshire was unrelated to injuries caused in Massachusetts to a plaintiff who purchased DES in that Commonwealth, the court said,

> [w]ere we to view Lilly's sales of DES in New Hampshire as sufficiently related to Glater's injuries to present the issue of specific jurisdiction, we would be obliged to hold that *any* plaintiff in Glater's position—a nonresident injured out of state by a drug sold and consumed out of state—could bring suit in New Hampshire for DES injuries. The exercise of what would amount to retributive jurisdiction in such circumstances comports with neither logic nor fairness.

*Id.* at 216 n. 4. But even if it had been determined that Glater's cause of action was related to Lilly's forum contacts, it need not necessarily have followed that specific jurisdiction would exist in that case or in all similar cases. Rather, upon reaching the third step of the prescribed

analysis, the court might next have chosen to proceed to a consideration of the more numerous and flexible factors which make up the relationship "among the defendant, the forum and the litigation." The court might then have concluded that *special* jurisdiction did not exist, despite the finding that the action was related to the defendant's forum contacts, because of the tenuous nature of defendant's forum contacts and the fact that the plaintiff was a nonresident, a factor which apparently is relevant in the third step of the analysis in a specific jurisdiction case, *see Keeton v. Hustler Magazine, Inc.*, —— U.S. ——, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Holloway v. Morrissey*, 739 F.2d 695 at 699 (1st Cir.1984); *Seymour v. Parke, Davis & Company*, 423 F.2d 584, 587 (1st Cir.1970).

**3.** In fact, *International Shoe* referred to causes of action which "arise out of *or* are connected with the [defendant's] activities within the state." (*Emphasis supplied.*)

ed by the recent First Circuit decision in *Glater v. Eli Lilly & Co.*, 744 F.2d 213 (1984). Glater was exposed *in utero* to diethylstilbestrol (DES) in the Commonwealth of Massachusetts. Thereafter, she lived in Massachusetts until 1975, moved to New Hampshire, and returned to Massachusetts in 1980. In 1981, while a Massachusetts resident, Glater brought suit in the United States District Court for the District of New Hampshire. The defendant advertised in New Hampshire and employed sales representatives who provided information concerning defendant's products to certain New Hampshire physicians, pharmacies and hospitals. The district court dismissed the action for lack of personal jurisdiction.

In affirming, the First Circuit stated that a "consideration of fundamental importance is whether the cause of action arises out of or is related to the defendant's contacts with the forum state," *Glater*, at 215. The court noted that the cause of action arose with respect to but a single victim in a particular location at a given time. Thus, although the defendant "sold DES in New Hampshire, [plaintiff's] cause of action did not arise from [defendant's] New Hampshire activities...." *Id.* The First Circuit then turned to a consideration of the relat-

edness doctrine and, "guided ... by the Supreme Court's recent discussion of specific jurisdiction[4] in *Keeton [v. Hustler Magazine, Inc.,* — U.S. —, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ]," [5] determined that Glater's cause of action was not related to the defendant's contacts with New Hampshire. Thus, *Glater* squarely holds that the sale in one state of a good which is advertised and sold nationwide is not "related" to systematic sales of the same good in another (the forum) state. Therefore, the exercise of *in personam* jurisdiction over NAA in the present action would be proper only if NAA has had continuous and systematic general business contacts with Maine.

The conclusion that plaintiff's cause of action is not related to the defendant's forum contacts largely disposes of plaintiff's remaining objections. It is not clear in what respect the plaintiff contends that the Magistrate should have given greater consideration to the fact that plaintiff is a Maine resident. Perhaps plaintiff contends that her residence is relevant to whether her cause of action is related to NAA's forum contacts, a contention which arguably finds support in *Glater*. In discussing the relatedness question, the First Circuit observed that "Glater's residence in New

---

**4.** In *Helicopteros,* the Supreme Court explained that the type of jurisdiction that is rendered permissible by reason of the relationship "among the defendant, the forum and the litigation" is *specific* jurisdiction. General jurisdiction exists if the defendant's contacts with the forum are so pervasive, *see* p. 663 *infra,* that the forum could exercise personal jurisdiction over the defendant in any cause of action, including actions totally unrelated to the defendant's forum contacts. — U.S. at — & nn. 8 & 9, 104 S.Ct. at 1872 & nn. 8 & 9, *citing* von Mehren & Trautman, *Jurisdiction To Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1136, 1136–64 (1966).

**5.** Kathy Keeton sued Hustler Magazine, Inc. in New Hampshire for damages caused by Hustler's nationwide circulation of magazines that allegedly libeled *Keeton.* The Court explained that "[t]he tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Magazine, Inc.,* — U.S. at —, 104 S.Ct. at 1479. Since some copies of the offending magazine were distributed in New

Hampshire, plaintiff's claim for damages caused by the allegedly libelous material contained in the copies distributed in New Hampshire apparently arose out of, as distinguished from being merely related to, the defendant's forum contacts. For example, the Court several times referred, at least to that part of plaintiff's claim, as "arising out of" or as "based on" the circulation of magazines in New Hampshire. *Id.* at ——–——, 104 S.Ct. at 1479–80.

Of course, most of the copies of the magazine were circulated outside of New Hampshire and Keeton was *"seeking* to recover damages suffered in all states in ... one suit." *Id.* The Court "agree[d] that the 'fairness' of haling respondent into a New Hampshire court depends to some extent on whether respondent's activities relating to New Hampshire are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities," *id.* at —, 104 S.Ct. at 1478, thus intimating that any damages arising from sales of the magazine outside of New Hampshire were related to sales of the same magazine in New Hampshire.

Hampshire at a time before suit was commenced did not enhance Lilly's contacts with the forum, for the injury occurred long before her move to New Hampshire and there were no effects in New Hampshire at the time of suit." *Glater v. Eli Lilly & Co.*, at 216. The plaintiff's residence may be relevant in the third step of the analysis of a specific jurisdiction case, for purposes of determining the relationship between the forum and the litigation, but it is difficult to see how the plaintiff's residence can "enhance [a *defendant's*] contacts with the forum," unless the "[p]laintiff's residence [is] the focus of the activities of the defendant out of which the suit arises," *Keeton v. Hustler Magazine, Inc.*, —— U.S. at ——, 104 S.Ct. at 1481; *see also Calder v. Jones*, —— U.S. ——, ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984).

Certainly this is not such a case. NAA's contacts with Maine consist of its advertising and sale of its parachuting and other equipment in Maine. When plaintiff purchased her parachuting equipment she was not a Maine resident. The fortuitous fact that she later returned to Maine is not a relevant contact between the *defendant* and the forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 295, 100 S.Ct. at 566.

Alternatively, plaintiff may be contending that her residence is relevant to whether the Court can exercise *general* jurisdiction. Once again, *dicta* in *Glater* arguably support such a contention. In a footnote to its conclusion that defendant Lilly's forum contacts were insufficient to establish general jurisdiction, the First Circuit said,

> [a]s we noted in our earlier opinion, the pending DES class action, in which Glater is a class plaintiff and Lilly a named defendant, is distinguishable on the ground that Glater was a New Hampshire resident when she moved to join the class action. *Glater [v. Eli Lilly & Co.,* 712 F.2d 735, 739 n. 2 [ (1st Cir.1983) ].

But the earlier *Glater* opinion had stated merely that "[t]he district court explicitly distinguished [Glater's individual suit from her participation in the class action] by

noting that Glater was a New Hampshire resident when she moved to join the class action," *Glater v. Eli Lilly & Co.*, 712 F.2d at 739, n. 2. Thus, *Glater* may not fairly be read as suggesting that a *plaintiff's* residence at the time suit is filed is relevant to the determination of general jurisdiction. Since general jurisdiction exists when the *defendant's* forum contacts are so pervasive that it could be sued in the forum on any cause of action, the test for general jurisdiction considers only the "contacts between the State and the foreign corporation," *Helicopteros Nacionales de Colombia v. Hall*, —— U.S. at ——, 104 S.Ct. at 1872. Accordingly, "[g]eneral jurisdiction to adjudicate has in American practice never been based on the plaintiff's relationship to the forum." von Mehren & Trautman, *Jurisdiction To Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. at 1137.

Having reviewed the record, the Court rejects plaintiff's suggestion that the Magistrate ignored some of defendant's contacts with Maine. But in any event, NAA's contacts with Maine are less extensive than the forum contacts Lilly had with New Hampshire and which the *Glater* court held to be insufficient to establish general jurisdiction.

In short, the only distinction between this case and *Glater* which would arguably militate in favor of jurisdiction is the fact that this plaintiff was a Maine resident at the time the suit was brought in Maine. But the circumstance of plaintiff's residence becomes relevant, if at all, only at the *third* step in the due process analysis and only in a specific jurisdiction case. *Glater* authoritatively establishes that specific jurisdiction cannot be found in the circumstances of the present case.

Accordingly, the recommendation of the Magistrate is ACCEPTED and NAA's motion to dismiss is GRANTED.

SO ORDERED.