**Wilbur Crane EVELAND, III, Plaintiff, Appellant,**

v.

**DIRECTOR OF CENTRAL INTELLIGENCE AGENCY, Defendant, Appellee.**

**No. 87–1480.**

United States Court of Appeals, First Circuit.

Submitted Jan. 8, 1988.

Decided April 4, 1988.

---

Wilbur Crane Eveland, III, on brief pro se.

Barbara L. Herwig, Civil Div., Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and Robert S. Mueller, III, U.S. Atty., Boston, Mass., for defendant, appellee.

Before BOWNES, BREYER, and TORRUELLA, Circuit Judges.

PER CURIAM.

On November 12, 1986, appellant, Wilbur Crane Eveland, III, commenced a *pro se* action in the District Court for the District of Massachusetts. The complaint, in its caption, names William J. Casey and the Central Intelligence Agency (CIA) as defendants. Additional individuals and government agencies are named in the body of the complaint and in an accompanying document entitled "Charges and Petition." We will refer to both items as the "complaint."

It is unclear exactly whom Eveland intends to denominate as defendants. However, according to the brief of the Assistant Attorney General, Eveland made service upon Richard Helms, William E. Colby, Kermit Roosevelt, Sr., Archibald B. Roosevelt, Henry Kissinger, Robert McFarlane, James J. Angleton and George Shultz.

Because we have no evidence to the contrary, we assume that the above individuals are the only defendants served with the complaint and a summons.

Eveland bases jurisdiction on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Although the complaint is complex and confusing, his substantive allegations appear to fall within two general categories. The first concerns United States foreign policy in the Middle East. Eveland, who apparently has had extensive experience in government service in the Middle East, offered to assist the Reagan administration in its efforts to resolve certain crises, such as the hostage situation in Lebanon, in that region of the world. He claims that various officials, including Schultz, obstructed his efforts and refused to accept his guidance. Eveland goes on to allege generally that Kissinger has assumed the powers of the President and has enabled the government of Israel to dominate the conduct of United States foreign policy. He recites detailed and convoluted historical data concerning events from 1940 through the present to support this claim.

The second category involves allegations that government officials engaged in tortious conduct against Eveland. Such activity includes libel, slander, character assasination, the publication of false charges, and attempted murder and other life-threatening actions. Specifically, Eveland alleges that Kissinger acted to discredit Eveland as a national security risk, did away with Eveland's "business interests and professional position," caused Eveland to live below the poverty level and engaged in measures to eliminate Eveland. Some of these allegations concern events that took place in 1975 and involve a lawsuit in England. Eveland also alleges that in 1951 Angleton, acting with Israel's Mossad, falsified documents which indicated that Eveland had passed classified information to British double

agent, Kim Philby. He finally alleges that his mail was intercepted.

Eveland seeks various forms of relief. He asks for compensatory and punitive damages. He requests that the CIA, the Department of State, the National Security Council and other federal entities produce all documents relating to him. He seeks an order requiring the CIA, Federal Bureau of Investigation, United States Postal Service, Secret Service and other United States law enforcement agencies to expunge from their files and alert lists all "unwarranted" information concerning him. Finally, Eveland asks that letters of apology be issued and that he be awarded any medals, citations and commendations for which he was recommended, but which were never issued. He does not specify what agencies would be responsible for complying with this last request.[1]

The government defendants moved to dismiss Eveland's complaint. On May 1, 1987, the district court granted their motion. It held that there is no case or controversy concerning the foreign policy allegations because Eveland was not in "danger of any immediate and direct injury as a result of the defendants' conduct." In addition, it pointed out that the administration of foreign policy and national security raised "purely political questions" for which there is no judicial remedy. As for Eveland's other allegations, the court stated that the complaint violates Fed.R.Civ.P. 8 in that it did not specify which defendant was allegedly responsible for what injury. The court further noted that Eveland had not established that the court had personal jurisdiction over the individual defendants nor had Eveland demonstrated that venue was proper in Massachusetts. Finally, the court held that the conduct of foreign policy and national security did not state a claim under RICO.

---

1. In his brief on appeal, Eveland adds charges, among others, concerning the sale of arms to Iran, Eveland's loss of employment with the Fluor Corporation in 1975, Eveland's arrest in 1975 in Singapore, the "murder" of Eveland's wife in 1982 and the failure of the Department of Justice to litigate claims on behalf of Eveland. We will not consider these matters, having been raised for the first time on appeal. *See Knight v. Mills,* 836 F.2d 659, 664 n. 6 (1st Cir.1987).

## DISCUSSION

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). Because Eveland is appearing *pro se,* his complaint is held to "less stringent standards" than pleadings drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam). Even reading Eveland's papers liberally, however, we conclude that the district court was correct in dismissing the complaint. We base our conclusion on three grounds: failure to state a justiciable cause of action, lack of personal jurisdiction over the individual defendants and principles of sovereign immunity.

### I. Justiciability

▆ The allegations concerning the conduct of the United States in the Middle East clearly reflect Eveland's attempt to litigate his disagreement with how this country's foreign policy is managed. The United States Supreme Court has held that

the very nature of executive decisions as to foreign policy is political, not judicial. Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative. They are delicate, complex, and involve large elements of prophecy. They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil. They are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.

*Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948) (citations omitted); *Oetjen v. Central Leather Co.,* 246 U.S. 297, 302, 38 S.Ct. 309, 310–11, 62 L.Ed. 726 (1918). Although courts will address some areas of foreign relations, *see Baker v. Carr,* 369 U.S. 186, 211–13, 82 S.Ct. 691, 706–08, 7 L.Ed.2d 663 (1962) (citing examples), Eveland's dispute with Middle Eastern policy does not fall within any of these narrow exceptions. As a result, Eveland has no judicial remedy for his claims involving foreign relations and his place in the conduct of such relations.

▆ Eveland's RICO claims also were properly dismissed under the political question doctrine. The only intelligible mention of RICO in the complaint is a statement that "Henry Kissinger, and those who have worked with him, and still are, have sold America to a RICO-controlled organization: the present government of Israel." It is clear that such an allegation concerns foreign policy and again reflects Eveland's attempt to air his differences with the government's conduct of Middle Eastern foreign policy. Eveland cannot use RICO to seek judicial redress for such a political question.

### II. Claims for Money Damages

#### A. *Sovereign Immunity*

▆ The remaining claims concern Eveland's allegations of tortious conduct. We begin our consideration of these claims with the well-settled principle that the United States may not be sued without its consent. *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) (citation omitted); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941) (citations omitted). As for Eveland's claims for money damages, the United States has consented to suit for certain torts in the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.[2] This stat-

---

**2.** Section 1346(b) provides, in relevant part, that the district courts

shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of prop-

erty, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States,

ute is Eveland's exclusive remedy for damages for tort claims against the United States, its agencies or officials acting in official capacities. *See* 28 U.S.C. § 2679(a). However, even if Eveland had based his tort claims on the Tort Claims Act, the district court would not have been able to consider them.

■ Section 2675 applies to procedure under the Tort Claims Act:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or. personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). There is no evidence that Eveland has followed this administrative process. Such failure deprives the district court of jurisdiction over his tort claims against the government agencies. *See Richman v. United States,* 709 F.2d 122, 124 (1st Cir.1983).

B. *Personal Jurisdiction*

■ To bring an action against the individual defendants in their personal capacities Eveland must establish that the individual defendants, both present and former officials, are subject to the personal jurisdiction of the district court. It appears that all of the defendants were served with process outside of Massachusetts. We assume, therefore, that none of the defendants resided in Massachusetts at the time suit was commenced. In this circumstance, Rule 4(e) provides that service of process upon parties who are not inhabitants of the state in which the district court sits may be made "under the circumstances and in the manner prescribed" by a statute or rule of court of the state in which the district court

if a private person, would be liable to the claimant in accordance with the law of the

sits. Fed.R.Civ.P. 4(e). Because Eveland's claims against defendants in their personal capacities would appear to be based on state tort law, we look to the long-arm statute of Massachusetts. *See* M.G.L. c. 223A, § 3.

Without discussing whether the requirements of the long-arm statute have been met, we find that defendants lack the constitutionally required "minimum contacts" with Massachusetts to support an assertion of jurisdiction over them by the district court. From even a liberal reading of the complaint, it appears that defendants have absolutely no contacts with Massachusetts. There are no indications that they have done business here or have engaged in any other activity within this jurisdiction. Certainly none of the conduct about which Eveland complains took place in Massachusetts. Rather, it appears that defendants' actions occurred in California, Washington, D.C., the Middle East and parts of Europe. As a result, defendants have not purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Because defendants have no reason to anticipate being haled into court in Massachusetts, due process forbids the maintenance of this suit against them. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

III. Claims For Specific Relief

■ Finally we come to Eveland's claims for specific relief. Although Eveland requests relief against numerous federal agencies, they apparently have not been served with process. They, therefore, are not defendants in this action. This leaves us with the individuals who presently are government officials. Although the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* contains a waiver of sover-

place where the act or omission occurred.

eign immunity for claims for nonmonetary relief, *see id.* § 702, Eveland does not seek relief under this Act. Nor could he as there is no indication that he has exhausted his administrative remedies.[3] See *id.* § 704. Similarly, Eveland cannot bring suit under the mandamus statute, 28 U.S.C. § 1361. This statute requires exhaustion of "all other avenues of relief." *Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022–23, 80 L.Ed.2d 622 (1984) (citations omitted). In addition, it only applies when a defendant owes the plaintiff "a clear nondiscretionary duty." *Id.* There is no doubt that Eveland's requests for specific relief do not concern duties of the defendants which clearly are ministerial in nature.

Although there are exceptions to the bar of sovereign immunity in suits for specific relief against government officials, *Kozera v. Spirito,* 723 F.2d 1003, 1008 (1st Cir. 1983), none of them apply here.

In summary, we find that Eveland's suit is barred by the political question doctrine in so far as it concerns foreign policy in the Middle East. His claims for money damages are barred by principles of sovereign immunity and the lack of personal jurisdiction over the individual defendants. The requests for specific relief also are barred by sovereign immunity. The judgment of the district court is therefore *Affirmed.*

3. Attached to one of Eveland's filings in the district court is a letter from the Department of Justice. This letter seems to indicate that Eveland had exhausted his administrative remedies concerning his request for documents from the Department of Justice. However, the Department of Justice is not a defendant in this action.