United States Court of Appeals
For the First Circuit

No. 97-1132

GEORGE F. NOONAN AND ANN MARIE NOONAN,

Plaintiffs, Appellants,

v.

THE WINSTON COMPANY, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge] 



Before

Boudin, Circuit Judge, 
Stahl, Circuit Judge, 
and Young,* District Judge. 



Michael D. Lurie, with whom Alex H. MacDonald, H. Bissell Carey, 
III, and Robinson & Cole, were on brief for appellants. 
Ralph G. Elliot, with whom Tyler Cooper & Alcorn, Walter H. Mayo, 
III, and Casner & Edwards, were on brief for Colour Library Books, 
Ltd.
Robert M. Callagy, Joshua M. Rubins, Satterlee Stephens Burke & 
Burke LLP, David R. Friedman, and Palmer & Dodge, were on brief for 
The Winston Company, et al.

February 2, 1998


*Of the District of Massachusetts, sitting by designation.

STAHL, Circuit Judge. Plaintiffs-appellants George STAHL, Circuit Judge. 

and Anne Marie Noonan challenge the district court's

dismissal, on personal jurisdiction grounds, of their

defamation, misappropriation and violation of the right of

publicity, and related claims against Colour Library Books,

Ltd., Lintas:Paris, R.J. Reynolds Tobacco Company, R.J.

Reynolds Tobacco International, Inc., R.J. Reynolds France,

S.A., Worldwide Brands, Inc., and Lintas:Worldwide. Having

fully considered plaintiffs' arguments, we affirm.

I. I. 

A. General Background 

George Noonan, a Boston Police Detective and a

devoted non-smoker, has spent the bulk of his twenty-two year

career educating Bostonians about the health risks of tobacco

use. During the summer of 1992, a magazine advertisement

sponsored by Winston cigarettes featuring Noonan's image

appeared in several French magazines. Noonan claims that the

unauthorized use of his image to benefit tobacco sellers has

caused him personal and professional harm and embarrassment.

The offending photograph has a long history. In

1979, Neil Sutherland, an employee of the English book

packaging house1 Colour Library Books ("CLB"), photographed

 

1. Packaging houses design and print books to be sold to
publishers.

-2- 2

Noonan in Boston without his permission. Although the

photograph was meant to appear in a coffee table book titled

Boston: City of Dreams, it was never published or 

distributed. The photograph remained in CLB files until

1990, when CLB published it in An American Moment. Two years 

later, CLB sold the photograph to the French advertising

agency Lintas:Paris, with no restrictions on its use and

without advising Lintas:Paris that Noonan had not granted a

release. Lintas:Paris used the photograph in a campaign for

client R.J. Reynolds France, S.A. ("RJR France"), a French

cigarette manufacturer.

RJR France had retained Lintas:Paris to design an

advertising campaign both to publicize Winston cigarettes and

to market an informational communications system called The

Minitel Service, an interactive network that provides

consumer services such as personal shopping, banking, and

remittance of income taxes. Companies sponsor segments of

the service in exchange for a share of the revenues

generated. The Winston Way, one component of the Minitel

Service, provides information about dining and entertainment

in France and is sponsored by the Cooperation Gesellschaft

fuer Markendiversifikation mbh, a German company affiliated

with RJR France and unrelated to this action.

The full-page advertisement pictures Noonan in his

Boston Police uniform and on horseback at Faneuil Hall in

-3- 3

Boston. The text reads, "The Winston Way," printed in the

form of the Winston cigarette logo -- white letters against a

red background. The advertisement also provides a phone

number for Minitel. Without the knowledge of Lintas:Paris,

at least 305 copies of various French magazines containing

the advertisements were distributed to, and at least 183 of

these were sold from, retail magazine outlets in the Boston

area. 

Noonan became aware of the offending advertisement

during the summer of 1992. Fellow police officers told

Noonan that a magazine with a picture of him on the back

cover was circulating. Nancy Fay, a Massachusetts resident

who had seen the advertisement while vacationing in France,

brought the advertisement to Boston and wrote to Noonan to

inquire whether the cigarette manufacturer had paid Noonan

for the advertisement. Noonan's son Greg saw the

advertisement when his French teacher brought a copy of a

magazine containing the advertisement to class; Greg's

faculty advisor told Greg that he had seen the advertisement

in France. Some people, assuming that Noonan had consented

to the use of his image, denounced him for supporting the

cigarette industry. As a result of what Noonan felt was an

attack on his reputation, he initiated this suit.

Given the number of parties to this litigation and

the importance of their relationships to plaintiffs'

-4- 4

jurisdictional theories, we begin with a brief overview of

the defendants. Defendant Lintas:Paris is a French

corporation, with its only office in Paris, France.

Defendant RJR France, also a French corporation, has

corporate offices in Boulogne-Billancourt, France. Defendant

R.J. Reynolds Tobacco ("RJR Tobacco") is a New Jersey

corporation with its principal place of business in New York,

New York. RJR Tobacco is the organization through which its

parent company, RJR Nabisco, Inc., conducts its domestic

cigarette business. Defendant R.J. Reynolds Tobacco,

International ("RJRTI"), the international analogue to RJR

Tobacco and also a wholly-owned subsidiary of RJR Nabisco,

Inc., is a Delaware corporation with its principal place of

business in Winston-Salem, North Carolina. Defendant

Worldwide Brands, Inc. ("Worldwide"), a dealer in trademark

rights and licenses and another RJR Nabisco, Inc. subsidiary,

is also a Delaware corporation. Worldwide's French offices

are in Boulogne-Billancourt. Defendant Lintas:Paris is a

wholly-owned subsidiary of France C.C.P.M, in turn a wholly-

owned subsidiary of Lintas Holdings, B.V., itself a wholly-

owned subsidiary of the Interpublic Group of Companies, Inc.

("Interpublic"). Noonan asserts that defendant

Lintas:Worldwide is an advertising corporation managed by

Interpublic. Defendants claim, and the district court found,

that Lintas:Worldwide is not a legal entity. For reasons we

-5- 5

shall explain infra, its existence vel non does not affect 

our decision. Finally, defendant CLB is a British company

with offices in Surrey, England.

B. Prior Proceedings 

The complaint sets forth five direct claims --

misappropriation and violation of the right of publicity, see 

Mass. Gen. Laws Ann. ch. 214, 3A (West 1985 & Supp. 1996);

defamation, invasion of the right of privacy, see id. 1B; 

reckless or intentional infliction of emotional distress;

unfair and deceptive acts, see id. ch. 93A, 2,11 -- and a 

derivative claim for loss of consortium, brought by Mrs. Anne

Marie Noonan.

The district court initially dismissed all claims,

pursuant to Fed. R. Civ. P. 12(b)(2), except those against

CLB for lack of personal jurisdiction over named defendants.

See Noonan v. The Winston Co., 902 F. Supp. 298 (D. Mass 

1995) ("Noonan I"). After allowing Noonan limited

jurisdictional discovery with respect to CLB, the court

dismissed all claims against CLB. See Noonan v. Colour 

Library Books, LTD., 947 F. Supp. 564 (D. Mass. 1996) 

("Noonan II"). Noonan appeals from these rulings.

Because the district court dismissed plaintiffs'

claims without holding an evidentiary hearing, we review the

rulings de novo, drawing facts from the parties' pleadings 

and supplementary filings, and construing all inferences in

-6- 6

the plaintiffs' favor. See Ticketmaster-New York, Inc. v. 

Alioto, 26 F.3d 201, 203 (1st Cir. 1994). 

-7- 7

II. II. 

On appeal, plaintiffs advance four arguments.

First, they assert the district court erred in concluding

that it lacked specific jurisdiction over defendants CLB,

Lintas:Paris (as RJR France's agent), and RJR France (as

Lintas:Paris' principal). Second, they contend the district

court erred by failing to exercise general jurisdiction over

RJR Tobacco and CLB. Third, they claim the district court

abused its discretion when it denied them permission to take

jurisdictional discovery before it ruled on the motions to

dismiss for lack of personal jurisdiction filed by defendants

RJTC, RJRTI, RJR France, Lintas:Worldwide, Lintas:Paris, and

Worldwide Brands. Finally, they argue the district court

improperly limited jurisdictional discovery as to CLB. 

"Specific personal jurisdiction may be asserted

where the cause of action arises directly out of, or relates

to, the defendant's forum-based contacts." United Elec., 

Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 

960 F.2d 1080, 1088-89 (1st Cir. 1992) ("Pleasant I") (citing

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 

408, 414 & n.8 (1984)). "General jurisdiction exists when

the litigation is not directly founded on the defendant's

forum-based contacts, but the defendant has nevertheless

engaged in continuous and systematic activity, unrelated to

the suit, in the forum state." Id. at 1088 (citing 

-8- 8

Helicopteros, 466 U.S. at 414-16 & n.9). Three questions 

constitute both the specific and general personal

jurisdiction analyses: 1) whether the Massachusetts long-arm

statute authorizes jurisdiction; 2) whether the defendant has

sufficient minimum contacts so that the exercise of

jurisdiction does not offend due process; and 3) whether the

exercise of jurisdiction is reasonable, and therefore does

not offend due process. Cf. United Elec., Radio & Mach. 

Workers of America v. 163 Pleasant St. Corp., 987 F.2d 39 

(1st Cir. 1993) (setting out steps for jurisdictional

analysis generally) ("Pleasant II"). We determine

reasonableness by applying factors we have described as

"gestalt factors."2 If the requirements of either the state

statute or the Due Process Clause of the U.S. Constitution

are not met, the foreign defendant will not be subject to

personal jurisdiction.

A. Jurisdictional Issues 

(i) Specific Jurisdiction over CLB 

As an initial matter, we decline to consider

whether CLB is subject to personal jurisdiction under a

theory of specific jurisdiction because the Noonans did not

 

2. The criteria are: "(1) the defendant's burden of
appearing, (2) the forum state's interest in adjudicating the
dispute, (3) the plaintiff's interest in obtaining convenient
and effective relief, (4) the judicial system's interest in
obtaining the most effective resolution of the controversy,
and (5) the common interests of all sovereigns in promoting
substantive social policies." Pleasant I, 960 F.2d at 1088. 

-9- 9

assert this theory below. Plaintiffs initially opposed the

defendants' motions to dismiss by arguing that the district

court had specific jurisdiction over all the defendants.

After completing discovery over CLB, however, plaintiffs

abandoned their specific jurisdiction claim against CLB,

arguing only that the court had general jurisdiction over it

or, in the alternative, that jurisdiction should be found as

a sanction for CLB's failure to comply in good faith with its

discovery obligations. Plaintiffs, therefore, may not raise

a specific jurisdiction theory against CLB now, for "[i]f any

principle is settled in this circuit, it is that, absent the

most extraordinary circumstances, legal theories not raised

squarely in the lower court cannot be broached for the first

time on appeal." Teamsters, Local No. 59 v. Superline 

Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). There are no 

extraordinary circumstances in this case; plaintiffs had

ample time to consider and advance their best arguments

supporting specific jurisdiction.

(ii) Specific Jurisdiction over Lintas:Paris and 

RJR France  

Because we determine that the assertion of personal

jurisdiction over Lintas:Paris and RJR France would offend

due process, we decline to decide the difficult question

whether plaintiffs have established a prima facie case 

authorizing personal jurisdiction over these defendants under

-10- 10

the Massachusetts long-arm statute. See Ticketmaster, 26 

F.3d at 205; U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 

F.2d 9, 11 (1st Cir. 1990); Eveland v. Director of Cent. 

Intelligence Agency, 843 F.2d 46, 50 (1st Cir. 1988).   

The Due Process Clause of the Fourteenth Amendment

permits a state to exercise personal jurisdiction over a non-

resident defendant only when the defendant has sufficient

minimum contacts with the forum. See Int'l Shoe Co. v. 

Washington, 326 U.S. 310, 316 (1945). Sufficient minimum 

contacts exist for specific jurisdiction when "(1) the claim

underlying the litigation . . . directly arise[s] out of, or

relate[s] to, the defendant's forum-state activities, (2) the

defendant's in-state contacts . . . represent a purposeful

availment of the privilege of conducting activities in the

forum state, thereby invoking the benefits and protections of

that state's laws and making the defendant's involuntary

presence before the state's courts foreseeable, and" (3)

exercising jurisdiction is fair under the gestalt factors.

Pleasant II, 987 F.2d at 43 n.9. The decisive due process 

issue in this case is whether the defendants' activities

satisfy the purposeful availment requirement.

Plaintiffs correctly draw our attention to Calder 

v. Jones, 465 U.S. 783 (1984), in which the Supreme Court 

adopted an effects test for determining purposeful availment

in the context of defamation cases. Calder concerned two 

-11- 11

Florida reporters, employed by The National Enquirer, who 

wrote a libelous article about California entertainer Shirley

Jones. Id. The Supreme Court held that jurisdiction 

properly could be asserted over the reporters because the

defendants had aimed an act at the forum state, knew the act

would likely have a devastating effect, and knew the injury

would be felt in the forum state, where Jones lived and

worked "and in which the National Enquirer ha[d] its largest

circulation." Id. at 790. Plaintiffs' circumstances 

satisfy only the injurious-effects part of the Calder test. 

Like Jones, plaintiffs felt a tortious effect in the forum

state where they lived and worked. Moreover, the content of

the picture -- a Boston Police Officer in uniform, sitting on

a saddle blanket decorated with the Boston Police insignia,

in front of a distinctive Boston landmark -- indicated where

any injury would be felt.

For the first part of Calder's framework to be 

satisfied, however, the defendants must have acted toward the

forum state with sufficient intent to make them "reasonably

anticipate being haled into court there." World-Wide 

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In 

Calder, the court found that the defendants' intentional 

conduct was "calculated to cause injury to respondent in 

California." Calder, 465 U.S. at 791 (emphasis added). 

There is no analogous intentional behavior here.

-12- 12

Plaintiffs do not allege, and the record does not

suggest, that any acts by Lintas:Paris3 were committed with

sufficient purpose to satisfy the intent requirement.4 The

defendants did not direct their actions toward Massachusetts.

That the advertisement contains French text and a French

phone number suggests Lintas:Paris created it for a French

audience. This interpretation is corroborated, without

contradiction, by a Lintas:Paris representative who stated

that "[t]he advertisement was aimed solely at the French

consumer market." Roux Aff., 12. Furthermore,

Lintas:Paris "was not aware that some copies of the magazines

bearing the advertisement" would reach Massachusetts. Id.  

15. 

Although plaintiffs fleetingly refer to

Lintas:Paris' knowledge that the advertisements would reach

Massachusetts and passingly contest the district court's

 

3. We first consider Lintas:Paris' actions alone because the
Noonans' jurisdictional claims over RJR France rest on its
agency relationship with Lintas:Paris. The viability of
plaintiffs' claims against RJR France depends on our first
finding that Lintas:Paris purposefully availed itself of the
forum state.

4. The district court emphasizes that Noonan "did not allege
any of the defendants . . . even knew who he was, much less
that they published his picture intending that he be harmed
in Massachusetts." Noonan I, 902 F. Supp. at 305. In our 
view this argument implies too high a jurisdictional hurdle.
Because this is an inquiry regarding jurisdiction, not the
underlying tort, the defendant must only be shown to have
intentionally directed an act, tortious or otherwise, toward
the forum state. The defendants' lack of a specific intent
to harm Noonan is irrelevant. 

-13- 13

denial of discovery as to what Lintas:Paris should have

known, they do not dispute Lintas:Paris' claims of actual

ignorance.5 Instead, relying on Calder and other cases where 

the defendant intentionally sent fraudulent or defamatory

material into the forum, plaintiffs imply that the

defendants' intent to reach Massachusetts can be inferred

from the placement of advertisements in publications with

international circulations. Cf. Murphy v. Erwin-Wasey, Inc., 

460 F.2d 661 (1st Cir. 1972) (defendant intentionally sent

fraudulent material into forum); Borshow Hosp. & Med. 

Supplies, Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472 

(D.P.R. 1992) (defendant sent letters into forum). 

In Calder, because the libelous story was generated 

from California sources, concerned a California celebrity,

and appeared in a newspaper with a forum circulation of

600,000 copies, the Court found that California was the focal

point of both the effect and the story. See Calder, 465 U.S. 

 

5. As noted above, plaintiffs only vaguely referred to
Lintas:Paris' knowledge in its appellate brief. Further,
plaintiffs perfunctorily asserted to the district court, in a
footnote, a need for discovery as to whether Lintas:Paris
should have known that the magazines would be distributed in
Massachusetts. These assertions are not tantamount to a
rebuttal of Lintas:Paris' claims of ignorance. See United 
States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not 
enough merely to mention a possible argument in the most
skeletal way, leaving the court to do counsel's work, create
the ossature for the argument, and put flesh on its bones.").
Nor is the footnote sufficient to have preserved an argument
that negligence is sufficient to constitute purposeful
availment.

-14- 14

at 789. Here, however, plaintiffs' claims rest on an

advertisement which appeared in 305 individual magazines,

circulated in Massachusetts. This small distribution, by

itself, does not merit a finding that Massachusetts was the

focal point of the events in question, or that Lintas:Paris

aimed the advertisements toward Massachusetts. The size of a

distribution of offending material helps determine whether a

defendant acted intentionally. The Supreme Court has held

that a publisher's regular circulation of a large number of

magazines containing allegedly libelous content in a forum

state indicated deliberate and continuous exploitation of a

market and, therefore, was sufficient to support

jurisdiction. See Keeton v. Hustler Magazine, Inc., 465 U.S. 

770, 781 (1984). Just as widespread circulation of a

publication indicates deliberate action, thin distribution

may indicate a lack of purposeful contact. See Chaiken v. VV 

Publ. Corp., 119 F.3d 1018 (2d Cir. 1997) (holding that 

jurisdiction over an Israeli publisher for a libel action

involving an insignificant distribution -- four copies or

.04% of total circulation -- offends due process), petition 

for cert. filed, U.S.L.W. (U.S. Nov. 25, 1997) (No. 

97-6984).

Plaintiffs urge us to rely on Gordy v. The Daily 

News, 95 F.3d 829 (9th Cir. 1996), a case in which the Ninth 

Circuit found that the distribution of under twenty

-15- 15

newspapers was sufficient to confer jurisdiction over a

foreign newspaper and its reporter. Unlike Lintas:Paris,

however, the Gordy defendants targeted the forum state by 

distributing newspapers via regular customer subscriptions to

forum addresses. Here, as noted, Lintas:Paris denies knowing

the ultimate destination of the magazines that reached

Massachusetts, and plaintiffs have not alleged otherwise.

While we sympathize with George Noonan's distress at seeing

his image used to promote a product he despises, his

Massachusetts-based injury is not enough to support

jurisdiction over the defendants. To find otherwise would

inappropriately credit random, isolated, or fortuitous

contacts and negate the reason for the purposeful availment

requirement. Without finding minimum contacts, we need not,

and do not, proceed to the reasonableness analysis. See 

Donatelli v. National Hockey League, 893 F.2d 459, 471 (1st 

Cir. 1990).

(iii) General Jurisdiction over CLB and RJR Tobacco 

According to plaintiffs, CLB's and RJR Tobacco's

contacts with Massachusetts were sufficiently continuous and

systematic to permit the district court to exercise general

jurisdiction. 

(a) CLB 

We begin our analysis with the relevant section of

the Massachusetts long-arm statute: 

-16- 16

A court may exercise personal
jurisdiction over a person, who acts
directly or by an agent, as to a cause of
action in law or equity arising from the
person's . . .
(d) causing tortious injury in this
commonwealth by an act or omission
outside this commonwealth if he regularly
does or solicits business, or engages in
any other persistent course of conduct,
or derives substantial revenue from goods
used or consumed or services rendered, in
this commonwealth . . . . 

Mass. Gen. Laws Ann. ch. 223A, 3(d) (1985 & Supp. 1996).

In our effort to "effectuate . . . [the Commonwealth's]

legitimate desire to protect its citizens," we construe the

statute broadly. Mark v. Obear & Sons, Inc., 313 F. Supp. 

373, 376 (D. Mass. 1970).

Viewing the facts in a light most favorable to

plaintiffs, the threshold requirement of 3(d), that

plaintiffs' in-state harm was caused by the defendant's out-

of-state act, is easily met. The plaintiffs suffered an

injury in Massachusetts where the use of George Noonan's

image caused him shame and embarrassment and engendered the

loss of consortium of which Anne Marie Noonan complains.

Furthermore, CLB's allegedly improper act, the unauthorized

sale of the photograph containing Noonan's image, was a

foreign act that arguably contributed to plaintiffs' in-state

injuries.

Plaintiffs' appeal raises the issue of whether the

district court properly decided that plaintiffs failed to

-17- 17

satisfy the second requirement of 3(d), that CLB had

sufficient additional contacts with the forum. The district

court assumed that plaintiffs' "best case [fell] under the

'substantial revenues' test of 3(d)," and found the

revenues insufficient to meet the test. Noonan II, 947 F. 

Supp. at 571. We think, however, plaintiffs' best case falls

under the "doing or soliciting business" test. Because this

clause is disjunctive, only one of its prongs needs to be

satisfied. While the parties energetically debate the

success of CLB's Massachusetts solicitations, we measure only

the solicitations themselves.

CLB solicited business in Massachusetts with

sufficient regularity to satisfy the statute. Beginning in

the fall of 1992 and continuing until plaintiffs' complaint

was filed in May 1994, CLB employees regularly solicited

business from World Publications, Inc. ("World"), a remainder

house located in Dighton, Massachusetts. During the two-year

period, CLB employees telephoned, faxed, and wrote to World

to secure book orders.6 In addition, CLB employees traveled

 

6. The lower court sets forth the details regarding CLB's
courtship of World, beginning with the early 1994 contacts.
See Noonan II, 947 F. Supp. at 567-68. Because the district 
court recognized only successful solicitations, it did not
recount the following pre-1994 contacts: In October 1992,
CLB's International Sales Director, Bill Dancer, began
soliciting World's business. World provided CLB with a
credit reference, and CLB provided World with a credit
application form. In November 1992, Dancer traveled to
Massachusetts, met with World, and secured a $210,000 order.

-18- 18

from England to Massachusetts on at least two occasions with

the intention of developing a relationship with World.

Finally, in the spring of 1994, World employees visited CLB

in England to negotiate orders.7 In sum, CLB's direct

solicitations of forum companies are adequately regular and

targeted to satisfy 3(d). Cf. Keds Corp. v. Renee Int'l 

Trading Corp., 888 F.2d 215, 217-19 (1st Cir. 1989) (the sale 

of 6000 pairs of shoes to a Massachusetts wholesaler and the

subsequent shipping of 18 sample shoes indicated defendants'

intent to begin ongoing relations).

We therefore turn to whether these contacts are

sufficient to satisfy the Constitution. Until the date

plaintiffs filed their complaint, CLB's relevant contacts

with Massachusetts were Neil Sutherland's visits to

Massachusetts in 1979, the business solicitations discussed

above, and approximately $585,000 of orders from World.8 The

 

7. In 1993, CLB also sought business relationships with two
other Massachusetts publishers, Lauriat's Booksellers and
Little Brown and Company. CLB disputes the propriety of
counting the Little Brown and Company contact because, in
response to CLB's overture, Little Brown and Company directed
CLB to contact a New York office. We need not resolve this
dispute because, for purposes of 3(d), CLB's solicitations
are sufficient even without the Little Brown and Company
solicitation. 

8. The parties clash over which contacts should be
considered in the general jurisdiction analysis. First, they
dispute whether a foreign corporation's contacts with the
forum should be measured up to the time of the alleged tort,
up to the time the complaint is filed, or at any time. We
have considered all contacts established up to the time
Noonan filed his complaint. See infra. at 23-25. Second, 

-19- 19

standard for evaluating whether these contacts satisfy the

constitutional general jurisdiction test "is considerably

more stringent" than that applied to specific jurisdiction

questions. Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st 

Cir. 1984). In addition, courts must exercise even greater

care before exercising personal jurisdiction over foreign

nationals. See Asahi Metal Indust. Co. v. Superior Court, 

480 U.S. 102, 115 (1987) (citing United States v. First Nat'l 

City Bank, 379 U.S. 378, 404 (1965) (Harlan, J., 

dissenting)).

Plaintiffs assert CLB's contacts were sufficient to

establish general jurisdiction because they are purposeful,

frequent, intense, and successful. Although our decision

must be based on a fact-specific evaluation of CLB's

contacts, we are guided by the types of contacts deemed

sufficiently continuous and systematic in other cases.

We look to two of our previous cases in which the

appellants argued, as plaintiffs do now, that general

jurisdiction applied to an out-of-state seller. In both

 

they disagree over whether it is appropriate to consider
revenues other than those actually paid to CLB prior to the
filing of the complaint. On this point we part company with
the district court and think it reasonable to include amounts
owed, but not yet paid, to CLB from orders placed by
Massachusetts companies. Third, they arrive at different
totals of the amounts owed, but not yet paid, to CLB because
some orders were changed before the complaint date. For
purposes of this analysis, we have included amounts paid to
and ordered from CLB, but not cancelled before the date
Noonan filed his complaint.

-20- 20

cases, the defendant had more continuous and systematic

contact with the forum state than CLB had with Massachusetts.

In both cases, we judged the contacts insufficient to permit

an assertion of general jurisdiction.

First, in Glater, we found that a manufacturer who 

advertised, employed eight sales representatives to

distribute information, and sold products to distributors in

the forum was not subject to general jurisdiction. See 744 

F.2d at 217. Although CLB's selling efforts by its England-

based sales-force represented substantial work, they were not

as intense, active, and frequent as those of the Glater 

manufacturer's full-time sales representatives. Compare id. 

at 214-15, 217 with Noonan II, 947 F. Supp. at 567-68; see 

also supra notes 6 & 7. 

In Donatelli, we found that ten years of providing 

league officials at exhibition hockey games, scouting,

providing television broadcasts, and selling products bearing

the National Hockey League (NHL) logo, taken together, did

not meet the due process test. See Donatelli v. Nat'l Hockey 

League, 708 F. Supp. 31, 35 (D.R.I. 1989) (reciting facts), 

reversed 893 F.2d 459 (1st Cir. 1990). Although CLB's 

contacts were arguably more intense than the NHL's contacts

-21- 21

in Rhode Island, its two-year history in Massachusetts is far

less continuous than the ten years of activity in that case.9

Having determined that sufficient minimum contacts

to authorize general jurisdiction over CLB do not exist, we

do not need to assess whether asserting jurisdiction would be

reasonable under the gestalt factors. See Donatelli, 893 

F.2d at 471.

 

9. We note that in Keeton, the Supreme Court suggested that 
the distribution of 10-15,000 copies of a magazine in the
forum state each month may not have been substantial enough
to support general jurisdiction. 465 U.S. at 779. CLB's
efforts were not as regular as those of Hustler Magazine's in
New Hampshire, where Hustler had built up a subscription
base. 

-22- 22

(b) RJR Tobacco 

Plaintiffs also argue that general jurisdiction

over RJR Tobacco is proper under 3(d) and Mass. Gen. Laws

ch. 223, 38. We will not, however, consider whether

jurisdiction lies over RJR Tobacco because we do not agree

with the premise that purportedly connects RJR Tobacco to

this litigation. Cf. Hachikian v. Federal Deposit Ins. 

Corp., 96 F.3d 502, 504 (1996) (concluding that we may 

affirm the entry of summary judgment on any alternate ground

made manifest by the record). 

While not disputing that it is the actions of RJR

France, and not RJR Tobacco, that are put in issue by the

allegations in their complaint, plaintiffs have nonetheless

named RJR Tobacco as a defendant because (1) it, like RJR

France, sells Winston cigarettes; and (2) it belongs to the

same family of corporations as RJR Tobacco. These two

assertions ignore the corporate form, and are patently

insufficient to raise a claim involving an attribution of

liability to RJR Tobacco under a veil-piercing theory in

Massachusetts. Cf. Birbara v. Locke, 99 F.3d 1233 (1st Cir. 

1996) (discussing the stringent test for corporate veil-

piercing in Massachusetts); Omni-Wave Elec. Corp. v. Marshall 

Indus., 127 F.R.D. 644, 647 (D. Mass. 1989) (stating that the 

mere assertion that defendants are alter egos or joint

ventures is not sufficient to withstand a motion to dismiss);

-23- 23

American Home Assurance Co. v. Sport Maska, Inc., 808 F. 

Supp. 67, 73 (D. Mass. 1992) ("Piercing the corporate veil is

permitted only where there is confused intermingling between

corporate entities or where one corporation actively and

directly participates in the activities of the second

corporation, apparently exercising pervasive control.").

B. Discovery Issues 

Plaintiffs contend that the district court abused

its discretion in denying them permission to take

jurisdictional discovery over defendants RJR Tobacco, R.J.

Reynolds Tobacco International, Inc., R.J. Reynolds France,

S.A., Lintas:Worldwide, Lintas:Paris, and Worldwide Brands,

Inc. In addition, plaintiffs assert that the district court

improperly limited discovery over CLB. We apply a

deferential standard in reviewing the lower court's discovery

rulings, reversing only if the orders were "plainly wrong and

resulted in substantial prejudice to the aggrieved party."

Crocker v. The Hilton Int'l Barbados, Ltd., 976 F.2d 797, 801 

(1st Cir. 1992) (citing Santiago v. Fenton, 891 F.2d 373, 379 

(1st Cir. 1989)).

(i) The Advertising and Tobacco Defendants 

The denial of plaintiffs' request for

jurisdictional discovery as to the tobacco and advertising

defendants was not an abuse of discretion. Throughout this

litigation, plaintiffs have argued that the denial of this

-24- 24

request deprived them of the opportunity to ascertain the

interrelationships among the defendants. Proving ties among

the tobacco defendants or between Lintas:Paris and the

tobacco defendants would not assist plaintiffs' cause absent

a concomitant demonstration that Lintas:Paris availed itself

of the Massachusetts forum. We have already ruled against

plaintiffs on this point.

(ii) Limitation of Discovery over CLB  

Plaintiffs contend that if the district court had

allowed them leeway to discover all contacts between CLB and

Massachusetts throughout the litigation period, they would

have been able to establish general jurisdiction over CLB.

In its decision to deny jurisdiction over CLB, the district

court posed the question, "Is a foreign corporation's contact

with the forum to be measured at the time of the alleged tort

. . . , at the time the Complaint is filed . . . , or at any

time . . . ?" Noonan II, 947 F. Supp. at 571. Judge Stearns 

applied the middle approach, and limited Noonan's discovery

requests to contacts through the date the complaint was

filed. We agree with this ruling insofar as it rejects as

irrelevant post-complaint contacts. Metropolitan Life Ins. 

Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569-70 (2d Cir.) 

("In general jurisdiction cases, district courts should

examine a defendant's contacts with the forum state over a

period that is reasonable under the circumstances -- up to

-25- 25

and including the date the suit was filed -- to assess

whether they satisfy the 'continuous and systematic'

standard."), cert. denied, 117 S. Ct. 508 (1996). 

Plaintiffs dispute this approach on the grounds of

law and policy. They first contend that a majority of courts

routinely analyze contacts with the forum based on evidence

from both before and after the date of the complaint. None

of the cases they cite in support of this argument, however,

directly speaks to the question posed here. See Wheeler 

Energy Corp. v. Metallgesellschaft AG, No. 91-214-SLR, 1993 

U.S. Dist. LEXIS 20450 (D. Del. Jan. 4, 1993); American Home 

Assurance, 808 F. Supp. 67; Kolikof v. Samuelson, 488 F. 

Supp. 881 (D. Mass. 1980); Mark v. Obear & Sons, 313 F. Supp. 

at 375. Moreover, all of these cases, at best, involve a

court's inclusion of fiscal-year sales or revenue figures (in

each case, from a survey of data that spans several

proceeding years) in its minimum-contacts analysis. Finally,

the majority approach is not as plaintiffs suggest. See 

Robertson-Ceco, 84 F.3d at 569 (surveying cases from the 

Supreme Court and the Second, Fifth, and Ninth Circuits).

Plaintiffs also claim that limiting discovery to

the complaint date is unfair. They maintain that, under such

a rule, an entity which causes an injury in Massachusetts

from its non-forum based operations and thereafter chooses to

enter the forum market could deny that jurisdiction over it

-26- 26

existed even though it enjoys the benefits of the forum and

was, prior to market entry, on notice of the litigation.

They also warn that undesirable exploitation of statute of

limitations periods will result from limiting the contact

analysis to the period before the complaint date. Savvy

plaintiffs who wait until the end of the limitations period

to maximize the chance of asserting jurisdiction will be

rewarded for their dilatory tactics.

Whatever merit such policy arguments might have,

the central fact remains that the time the complaint is filed

is the time at which the plaintiff urges the court to assert

its authority over the defendant. It would be conceptually

incoherent to permit the court to look to post-complaint

contacts in proving that it had authority at a previous

time.10 Therefore, while Noonan may have discovered

 

10. Given our basis for rejecting plaintiffs' claims, we
have considerable doubt about CLB's argument that the
sufficiency of contacts for general jurisdiction should be
assessed at the time of the alleged tort. Although Judge
Stearns used the complaint date to bound the minimum contacts
analysis, he appears to have agreed with CLB, positing that,
"to the extent that foreseeability is a touchstone of due
process[,] logic would measure general jurisdiction as of the
date the tortious act is committed." Noonan II, 947 F. Supp. 
at 571. CLB argues the choice to forbear from the conduct
that might cause the injury inspiring the suit can be made
only at the time the tort is about to be committed. We note
the foreseeability question is not whether the defendant
should reasonably expect to be called into court but whether,
given that the defendant has been called to court, the
defendant would be surprised to find a particular court has 
called him. Asking this question from the perspective of the
defendant at the time he allegedly committed the tort is
likely premature because not until the complaint is filed is

-27- 27

additional contacts between CLB and Massachusetts had he been

permitted to continue discovery throughout the litigation,

such contacts have no bearing on the jurisdictional analysis.

Accordingly, the district court did not abuse its discretion

in ruling as it did. 

For the reasons stated above, the judgment of the

district court is affirmed. Costs to appellees. affirmed. 

 

the court asked to exercise its sovereignty.

-28- 28