Cathy Ann GLATER, Plaintiff,
Appellant,

v.

ELI LILLY & CO., Defendant, Appellee.

No. 82–1864.

United States Court of Appeals,
First Circuit.

Argued April 4, 1983.

Decided July 12, 1984.

Stanley M. Brown, Manchester, N.H., with whom Brown & Nixon P.A., Manchester, N.H., Thomas R. Watson, and Tybursky & Watson, Portsmouth, N.H., were on brief, for plaintiff, appellant.

Don M. Kennedy, Boston, Mass., with whom Marshall Simonds, P.C., Frank Dennis Saylor, IV, Goodwin, Procter & Hoar, Boston, Mass., John A. Graf, Richard S. Snierson, and McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Cathy Ann Glater brought this diversity action in the United States District Court for the District of New Hampshire against Eli Lilly & Co. (Lilly) in January 1981. She sought damages for personal injuries allegedly caused by exposure *in utero* to diethylstilbestrol (DES), a drug manufactured and distributed by Lilly. By order dated October 13, 1982, the district court granted Lilly's motion to dismiss for lack of personal jurisdiction; Glater appealed.

In a previous published opinion we addressed two preliminary questions,[1] leaving open the ultimate issue of whether dismissal for lack of personal jurisdiction was proper. *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739–40 (1st Cir.1983). We deferred final decision until the Supreme Court announced its decision in *Keeton v. Hustler Magazine, Inc.*, —— U.S. ——, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), *rev'g Keeton v. Hustler Magazine, Inc.*, 682 F.2d 33 (1st Cir.1982). We now affirm.

The facts may be briefly summarized. At the time of Glater's exposure *in utero* to DES, Glater's mother lived in Massachusetts. Glater was born in Massachusetts and lived there until 1975, when she moved to New Hampshire. She was employed at the New Hampshire office of an insurance company, and was transferred to a Massachusetts office in 1980. In August 1980 Glater returned to live in Massachusetts, but continued thereafter to maintain certain contacts with New Hampshire. She was a Massachusetts resident in January 1981, when she commenced this action. Lilly is an Indiana corporation which has marketed DES nationwide since 1947. Lil-

---

1. We determined that Lilly did not waive its right to raise the issue of personal jurisdiction, even though it did not raise this issue in its answer, because it was not on notice at that time that Glater was not a New Hampshire resident. We also held that the pendency of a DES class action in the same district court involving Glater as a class plaintiff and Lilly as a named defendant did not automatically preclude dismissal in this case. *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir.1983).

ly engages in limited advertising of its pharmaceutical products in professional trade journals which circulate in New Hampshire, and employs eight sales representatives whose duties consist in part of providing information concerning Lilly products to certain New Hampshire physicians, pharmacies and hospitals. Three of the sales representatives live in New Hampshire. Neither the sales representatives nor Lilly directly sells products in New Hampshire; rather, sales are made to individual wholesale distributors, some of whom are located in New Hampshire. Apparently, Lilly has appointed no agent to receive service of process in New Hampshire.

Lilly concedes in its answer to Glater's complaint that it does business in New Hampshire. This appears to bring Lilly within the terms of New Hampshire's long-arm statute for foreign corporations, which has been construed to extend to the constitutional limits of due process.[2] The issue before us, therefore, is whether the exercise of personal jurisdiction in these circumstances would be consistent with the due process standard articulated in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and further elaborated in subsequent cases.

■ As a threshold requirement for subjecting a defendant foreign corporation to personal jurisdiction under a state statute, there must exist "certain minimum contacts [between the defendant and the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278]." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. Whether a defendant's activities in the forum state are sufficient to support personal jurisdiction in a particular case depends on

the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Id.* at 319, 66 S.Ct. at 160. Thus, the Court has held that due process does not permit the exercise of personal jurisdiction based on a fortuitous automobile accident where the defendants (auto distributor and retailer) carry on no activity whatsoever in the forum state, close no sales, perform no services, avail themselves of no privileges or benefits of state law, solicit no business, and do not seek to serve the market of the forum state directly or indirectly. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 & 299, 100 S.Ct. 559, 566 & 568, 62 L.Ed.2d 490 (1980); *see also Rush v. Savchuk*, 444 U.S. 320, 332–33, 100 S.Ct. 571, 579–80, 62 L.Ed.2d 516 (1980). In the present case, Lilly has conceded that it transacts business in New Hampshire; there is not the "total absence" of contacts which would require automatic dismissal. *World-Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566.

■ Where a defendant has certain judicially cognizable ties to the forum state, "a variety of factors relating to the particular cause of action may be relevant" to the issue of jurisdiction. *Rush*, 444 U.S. at 332, 100 S.Ct. at 579. A consideration of fundamental importance is whether the cause of action arises out of or is related to the defendant's contacts with the forum state. If so, then "specific jurisdiction" may be found based on the relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, —— U.S. ——, —— & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (U.S. April 24, 1984), *citing Shaffer v.*

---

**2.** The New Hampshire long-arm statute in effect in 1981 provided for service of process on foreign corporations "authorized to transact, or transacting business" in New Hampshire. N.H. Rev.Stat.Ann. § 300:11. This statute was construed to extend to the limits of due process in *Roy v. North American Newspaper Alliance, Inc.*, 106 N.H. 92, 205 A.2d 844, 846 (1964).

*Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). If, on the other hand, the cause of action is unrelated to the defendant's instate activities, the issue becomes one of "general" rather than "specific" jurisdiction. *Helicopteros,* —— U.S. —— n. 9, 104 S.Ct. at 1872 n. 9. Although minimum contacts suffice in and of themselves for specific jurisdiction under *International Shoe,*[3] the standard for general jurisdiction is considerably more stringent. *See Keeton,* —— U.S. at ——, 104 S.Ct. at 1480; *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 587 (1st Cir.1970). The importance of the distinction is illustrated in the present case.

■ We are guided in our inquiry by the Supreme Court's recent discussion of specific jurisdiction in *Keeton,* where it was held that the defendant's regular circulation of magazines in New Hampshire was "sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in New Hampshire," even though the same contacts "may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities." —— U.S. at ——, 104 S.Ct. at 1479. The Court focused on the special context of libel in finding jurisdiction; the circulation of libellous magazines was viewed as causing injury to both the subject of the falsehood and the readers of the magazine whenever and wherever the magazines were circulated. Thus, the defendant's "regular circulation of magazines in the forum State [was held] sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Id.* at ——, 104 S.Ct. at 1478. By contrast, the present case involves a claim for personal injuries allegedly suffered as a result of exposure to a danger-

ous drug. Glater's cause of action is much more localized than libel, for it arises with respect to only a single victim in a particular location at a given time. Although Lilly sold DES in New Hampshire, Glater's cause of action did not arise from Lilly's New Hampshire activities; rather, her injuries were caused in Massachusetts by exposure *in utero* to DES which her mother purchased and consumed in Massachusetts. Glater's residence in New Hampshire at a time before suit was commenced did not enhance Lilly's contacts with the forum, for the injury occurred long before her move to New Hampshire and there were no effects in New Hampshire at the time of suit. We do not think that Lilly's sales of DES in New Hampshire can be said to be related to Glater's injury in the sense that the circulation of magazines in New Hampshire was related to the injury in *Keeton.*[4] Finding that the *Keeton* standard for specific jurisdiction is inapplicable in this case, we proceed with our analysis in terms of general jurisdiction.

■ General jurisdiction may be found in the absence of a relationship between a nonresident defendant's contacts with the forum and the cause of action where the defendant engages in the "continuous and systematic" pursuit of general business activities in the forum state. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 448, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952). The Court's holding in *Perkins* that due process did not prevent the exercise of jurisdiction was based on careful scrutiny of the defendant corporation's activities in the forum state: the chief officer maintained an in-state office where he kept company files, carried on company correspondence, held directors' meetings, and

---

3. In *International Shoe,* the Court emphasized not only the systematic and continuous nature of the defendant's contacts with the forum state but also the fact that the defendant's commercial activities within the state formed the basis for the tax obligation on which suit was brought. 326 U.S. at 320–21, 66 S.Ct. at 160–61.

4. Were we to view Lilly's sales of DES in New Hampshire as sufficiently related to Glater's in-

juries to present the issue of specific jurisdiction, we would be obliged to hold that *any* plaintiff in Glater's position—a nonresident injured out of state by a drug sold and consumed out of state—could bring suit in New Hampshire for DES injuries. The exercise of what would amount to retributive jurisdiction in such circumstances comports with neither logic nor fairness.

supervised company policies concerning the occupied foreign site of operations; the company's financial affairs were also handled through in-state banks. *Id.* at 447–48, 72 S.Ct. at 419–20. *Perkins* was expressly distinguished on its facts in *Helicopteros,* —— U.S. at ——, 104 S.Ct. at 1871–74, where the Court held that the defendant corporation's contacts with the forum state, including physical presence of a corporate officer for contract negotiations and regular purchases of equipment and training services, were not sufficient to meet the requirements of due process. *Id.* at ——, 104 S.Ct. at 1874.[5]

Lilly's New Hampshire contacts, which are of primary importance under a general jurisdiction analysis, are indistinguishable from those of the defendant in *Seymour v. Parke, Davis & Co.,* 423 F.2d 584 (1st Cir.1970). In *Seymour,* a manufacturer and distributor of another drug was sued in New Hampshire for injuries occurring in Massachusetts. The defendant maintained no office and engaged in no manufacturing in New Hampshire; it held no property there; it was not registered to do business there. Its only contacts with New Hampshire consisted of advertising and the activities of a half dozen salesmen, mostly New Hampshire residents, who accepted orders and disseminated product information to New Hampshire physicians, hospitals and retail pharmacies. *Id.* at 585. Noting "[t]he importance of differences," we expressly distinguished *Perkins* and held that where "defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume jurisdiction."

*Id.* at 586–87. Nothing in *Keeton* casts any doubt on *Seymour*'s continuing validity.

Although in *Seymour* we also emphasized the plaintiff's lack of contacts with the forum state, *id.* at 587, we see no material distinction from Glater's situation in the present case. In the absence of a demonstrable state interest in hearing the product liability claims of former residents, or a substantial showing based on considerations of fairness and convenience,[6] we think our holding in *Seymour* is controlling here. We need not speculate on what significance, if any, would arise if Glater had been a resident of New Hampshire instead of Massachusetts at the time she brought suit;[7] we note only that her actual status as a *former* New Hampshire resident does not appreciably affect our analysis. Glater's "lack of 'contacts' will not defeat otherwise proper jurisdiction," but her vestigial contacts with New Hampshire are not "so manifold as to permit jurisdiction when it would not exist in their absence." *Calder v. Jones,* —— U.S. ——, ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984).

We conclude that Lilly's activities in New Hampshire are not sufficient to support the exercise of general jurisdiction, and that the district court's dismissal on due process grounds was proper.

*Affirmed.*

---

5. In *Helicopteros,* the Court declined to address the question whether the defendant's purchases of equipment and services might be sufficient to confer specific jurisdiction, —— U.S. at —— n. 12, 104 S.Ct. at 1874 n. 12, thus suggesting that the distinction between specific and general jurisdiction may be dispositive in cases like the present one where the defendant's contacts with the forum state, though judicially cognizable, are minimal.

6. As we noted in our earlier opinion, the statute of limitations was not addressed below and is not before us on appeal. *Glater,* 712 F.2d at 740

n. 3. Even if New Hampshire were the only forum in which the statute of limitations had not yet run, the timeliness of the suit would present a choice-of-law question which should not "complicate or distort the jurisdictional inquiry." *Keeton,* —— U.S. at ——, 104 S.Ct. at 1480.

7. As we noted in our earlier opinion, the pending DES class action, in which Glater is a class plaintiff and Lilly a named defendant, is distinguishable on the ground that Glater was a New Hampshire resident when she moved to join the class action. *Glater,* 712 F.2d at 739 n. 2.