Ramonita GARCIA ANDINO; Ramonita Andino Rosa, and Aurea E. Garcia Andino, Plaintiffs,

v.

ALCAN ALUMINIO DO BRASIL, S.A.; Alcan Aluminum, Ltd., and Group Brazil, Inc., Defendants.

Civ. No. 85–0256 (JAF).

United States District Court,
D. Puerto Rico.

Jan. 21, 1987.

---

Federico Lora López, San Juan, P.R., for plaintiffs.

Eugenio Romero, Goldman & Antonetti, San Juan, P.R., Lawrence A. Salibra, II, Cleveland, Ohio, for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This case is before us on motions to dismiss filed by the defendants, who allege a lack of *in personam* jurisdiction. We also address plaintiffs' motion for reconsideration of our denial to amend the complaint to add Mr. Manuel Díaz as a defendant in the case. The pertinent facts of the case are as follows:

On February 6, 1984, plaintiffs Ramonita Andino Rosa and her daughter suffered severe burns when the lid of a Rochedo pressure cooker, manufactured by defendant Alcan Aluminio do Brasil, S.A. (Alcan/Brazil), blew off, causing steam and hot liquid to spray over them. Plaintiffs brought this product-liability suit against the manufacturer and two companies they allege to be the distributors of the pressure cooker, Alcan Aluminum Ltd. (Alcan/Canada), a Canadian corporation, and Group Brazil, Inc.

The defendants filed motions to dismiss alleging that there is no *in personam* jurisdiction in that they are all foreign corporations without minimum contacts. The motions are supported by affidavits. The affidavit of Alcan/Canada states that the company is merely a holding company for all the Alcan group companies and has never served as a distributor or national agent representative for Alcan/Brazil. Group Brazil's affidavit stated that it was not incorporated until March 1983, and has never sold or distributed Rochedo pressure cookers. The affidavit filed on behalf of Alcan/Brazil states, basically, that that company has no ties with Puerto Rico which traditionally constitute minimum contacts; that is, it has neither offices nor agents here, owns no real estate or personal property; neither does it keep bank accounts, telephones nor warehouses, nor is it licensed or does it solicit business in Puerto Rico.

## I.

Plaintiffs' own exhibits reveal the following as to Group Brazil: Group Brazil was incorporated in March 1983 to serve as a warehouse to facilitate the distribution of the products of several Brazilian manufacturers. The Rochedo pressure cookers which were removed from the market, and for which Group Brazil provided replacements, were manufactured between 1977 and 1981 and were sold between 1977 and 1982. Manuel Díaz, president of Group Brazil, states in his deposition that he, personally, is the sales representative for the Rochedo cookers in Puerto Rico and that he owns an apartment in San Juan where he stays when he comes here on business, which occurs several times a year. He also states that he had been selling the Rochedo cooker since as early as 1974.

As to Alcan/Brazil's ties to Puerto Rico, a December 29, 1983 bulletin from the U.S. Consumer Products Safety Commission states that of 300,000 faulty pressure cookers distributed in the United States, 240,-000 of them were marketed in Puerto Rico. Additionally, it appears from various invoices that Alcan/Brazil shipped the pressure cookers from Santos, Brazil directly to San Juan, Puerto Rico. A February 24, 1984 telegram from the company's Assistant Manager Manuel Santiago to Mr. Díaz states the following:

I thought it best to inform you that the final newspaper advertisements concerning the Rochedo pressure cookers, that Alcan Aluminio do Brasil, S.A. plans to place will not be published before your meeting with the *company's clients in Puerto Rico* ....

In an effort *to better inform the company's valued customers* and remove doubts, Alcan will place a final ad in Puerto Rico within the next month. (Emphasis added).

It is well settled doctrine that *in personam* jurisdiction over a nonresident is proper only when that party has certain minimum contacts with the forum so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940); *Glater v. Eli Lilly*, 744 F.2d 213, 215 (1st Cir.1984).

The traditional concept of minimum contacts has recently been extended by a Supreme Court keenly aware of today's technologies:

> Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citations omitted).

■ Courts, in appropriate cases, may evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 105 S.Ct. at 2184, *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id.; see also, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1982).

■ Where a defendant who has purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.

## II.

Applying these principles, we analyze the jurisdictional situation of each of the defendants:

■ Group Brazil, from the vast majority of documents, appears to be primarily a warehousing operation. It did, however, carry out the replacement of the defective pressure cookers at the direction of Alcan/Brazil. There is clear evidence, however, that by the time that Group Brazil was incorporated in Florida in 1983, the defective pressure cookers were no longer being sold and had been withdrawn from the market. We, therefore, find no cause of action for which a remedy may be granted against Group Brazil under Fed.R.Civ.P. 12(b)(6), and see no further need to evaluate its minimum contacts.

■ Alcan/Canada, in its affidavit, claims to be merely a holding company. While an investigative report claims that Alcan/Canada had hired Manuel Díaz as a sales representative for the pressure cookers in Puerto Rico prior to the establishing of Group Brazil, the source of this information is allegedly Anna Díaz and María del Carmen Díaz, wife and daughter, respectively, of Manuel Díaz. In their affidavits, however, both women state that they never told this to the investigator. Notwithstanding the confusion as to Alcan/Canada's role during the critical period 1977–1982, we find no evidence to defeat the affidavit alleging no minimum contacts.

■ The absence of any connection with Alcan/Canada is further supported by Manuel Díaz' admissions that he was the sales representative of Alcan/Brazil in Puerto Rico; that he traveled regularly to Puerto Rico "on business," owned an apartment here for use during those trips, and that he traveled to Brazil on occasion to deal with the company directly. Díaz' actions constitute the traditional minimum contacts envisioned by *International Shoe* and its progeny.

Alcan/Brazil shipped almost a quarter million defective pressure cookers into Puerto Rico. This represents the vast majority of its exports to the United States. It is clear that the company regarded the Puerto Rico businesses which purchased the pressure cookers as *its* clients or customers. The affidavit denying that it has solicited business in Puerto Rico is contradicted by Manuel Díaz' deposition testimony. We, therefore, believe that Alcan/Brazil's connection to Puerto Rico was such that it could reasonably anticipate being hailed into court here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980).

For the above-stated reasons, the motion to dismiss as to Group Brazil, Inc. and Alcan Aluminum Ltd. (Alcan/Canada) is GRANTED. Judgment shall be entered accordingly. Alcan Aluminio do Brasil, S.A.'s motion to dismiss is DENIED.

## III.

In their opposition to amend the complaint to add Manuel Díaz as a defendant, the other defendants have alleged that such an amendment is time-barred. Federal Rule of Civil Procedure 15(c) permits an amendment adding a party to relate back to the date of the original pleading if three conditions are met: (1) the claims against the new party arise out of the same occurrence as the claims in the original pleading, (2) the new party received "notice of the institution of the action" before the limitations period expired, and (3) the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." *Hernández Jiménez v. Calero Toledo*, 604 F.2d 99, 102 (1st Cir.1979), *citing* 6 C. Wright & A. Miller, *Federal Practice & Procedure* sec. 1498 at 507 (1971).

■ The institution of the action serves as constructive notice to the parties added after the limitations' period expired, when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced. *Id.*, at 102–103. We find that Díaz, as president of Group Brazil, had such constructive notice and, therefore, GRANT plaintiffs' motion to amend the complaint to add him as a defendant.

This action will be prosecuted only against Alcan Aluminio do Brasil, S.A. and Manuel Díaz as defendants. A scheduling order will issue under separate cover. The pretrial conference shall be held May 6, 1987, at 8:30 A.M.

IT IS SO ORDERED.