Botsford, J.
The plaintiffs in these consolidated cases, Audrey Snyder and Diane Snyder, assert wrongful death claims in relation to a private airplane crash in which each plaintiffs husband was killed. The defendants are ADS Aircraft Management, Inc., the long term lessee of the aircraft; ADS Aviation Maintenance, Inc., the maintenance company which replaced the plane’s crankcase; Daniels Aircraft International, Inc., the owner of the aircraft; Broughty and Broughty, a New York company which overhauled the aircraft and purchased and placed the connecting rod bolt nuts into the aircraft; Text-ron, Inc., Textron Lycoming, Inc., and AVCO Corporation, the manufacturers of the aircraft’s engine; and Superior Air Parts, Inc. (“Superior”), the manufacturer of the connecting rod bolt nuts installed on the aircraft. Presently before the court is the defendant Superior’s motion to dismiss. Superior moves under Mass.R.Civ.P. 12(b)(2), asserting that this court lacks personal jurisdiction over the nonresident defendant. In the alternative, Superior moves under Mass.R.Civ.P. 12(b)(6) to dismiss the plaintiffs’ strict liability claims on the basis that Massachusetts does not recognize such claims and the plaintiffs’ G.L.c. 93A claims because the transactions or sales involved occurred outside Massachusetts. For the reasons discussed below, Superior’s motion to dismiss under Rule 12(b)(2) is denied, and the motion to dismiss under Rule 12(b)(6) is allowed in part and denied in part.
BACKGROUND
The following facts relevant to the jurisdictional issue before the court are taken from the parties’ pleadings, affidavits, and exhibits.
On March 30, 1996, James Snyder, while piloting a Piper Aircraft, suffered an alleged engine failure causing him to crash and collide with an automobile on Route 495 in Wareham, Massachusetts. The crash resulted in the death of James Snyder and his passenger brother Samuel Snyder. Also killed were Karen Wilkerson and her daughter Brittany Wilkerson Karp, passengers of the automobile. All those killed in the crash were residents and domiciled in Massachusetts. The plaintiffs are also Massachusetts residents.
The plaintiffs claim that Superior manufactured the connecting rod bolts and connecting rod nuts which are alleged to have been installed upside down in the aircraft, causing the engine failure. The plaintiffs’ contention is that Superior failed to warn of the dangers resulting from improper installation of these aircraft parts and components, and failed to manufacture the parts properly. In short, the plaintiffs assert product liability claims against Superior. All parties concede that the Superior parts on the aircraft flown by the plaintiffs were not manufactured in Massachusetts, sold to a Massachusetts resident, or installed in Massachusetts.
Superior is incorporated in the State of Texas with its principal place of business in Dallas, Texas. Although Superior is not registered or licensed to do business in Massachusetts and has no offices, branches, or real or personal property in the state, the record indicates that Superior has been selling airplane parts in Massachusetts since the 1970s. Since he began with Superior in 1991, Dan Andrews (“Andrews”), Superior’s Northeast Sales Representative, has regularly traveled to Massachusetts to solicit and conduct business with both new and old customers. Andrews conducted business in Massachusetts on at least a quarterly basis, visiting several Massachusetts airports and soliciting each aircraft maintenance company at each airport.
Superior has over 100 Massachusetts customers.[5] From October 1, 1994 through September 27, 1999, Superior customers in Massachusetts placed 2,354 orders totaling 47,196 parts. From 1987 to 1998, Superior generated over $3,000,000 in revenues from its Massachusetts customers. In addition to advertising in national trade journals, Superior sends flyers to its customers when their orders are filed. Superior also maintains an Internet website which lists its toll free 800 telephone number, fax number, products, and prices.
*98 DISCUSSION
I. Motion to Dismiss pursuant to Mass.R.Civ.P. 12(b)(2)
A plaintiff confronted with a motion pursuant to Mass.R.Civ.P. 12(b)(2) bears the burden of establishing the facts upon which the “existence of personal jurisdiction over the defendant is to be determined.” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978).
Personal jurisdiction of a nonresident defendant requires a two-step analysis. A court must first be able to exercise jurisdiction over a defendant pursuant to the State’s long arm statute codified as G.L.c. 223A, §(a)-(g). The court must then consider whether the exercise of jurisdiction would be constitutional under the Due Process Clause. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Courts have generally recognized that jurisdiction can be either specific or general. Tatro, supra at 772, n.6. “Specific jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant’s forum-based contacts.” United Elec. Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984). “General jurisdiction exists when the litigation is not directly founded on the defendant’s forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity unrelated to the suit, in the forum state.” Id. at 1088. See Noonan v. Winston Co., 135 F.3d 85, 89 (1st Cir. 1998) (when specific or general jurisdiction is asserted, court must consider whether (1) State longarm statute authorizes jurisdiction, (2) defendant has sufficient minimum contacts to satisfy due process, and (3) exercise of jurisdiction is reasonable and therefore does not offend due process).
A. Jurisdiction under the Massachusetts Longarm Statute
The only section of the Massachusetts longarm statute applicable to the plaintiffs’ claims against Superior is G.L.c. 223A, §3(d).[6] Section 3(d) provides;
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s . . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods or services rendered, in this commonwealth . . .
The first distinct element under §3(d) requires the plaintiffs to demonstrate that the defendant’s act or omission caused a tortious injury inside Massachusetts. Cunningham v. Adrox, Inc., 40 Mass.App.Ct. 279, 281 (1996). The plane crash which occurred in Massachusetts was the tortious injury. The plaintiffs’ allegation that Superior, an out-of-state manufacturer, made the parts alleged to have caused the engine failure, satisfies the prong that the plaintiffs’ in-state harm was allegedly caused by an out-of-state act or omission by Superior.
The other distinct element under §3(d) requires some additional contact of the defendant with the Commonwealth. The plaintiffs must show that Superior (1) does business or solicits business in Massachusetts, (2) engages in some other persistent course of conduct in Massachusetts, or (3) derives substantial revenue from goods used or consumed or services rendered, in Massachusetts. “Because this clause is disjunctive, only one of its prongs needs to be satisfied.” Noonan v. Winston Co., supra, 135 F.3d at 92; Heins v. Wilhem Loh Wetzlar Optical Machinery GmbH, 26 Mass.App.Ct. 14, 20, further app. rev. denied, 402 Mass. 1105 (1988).
Despite Superior’s assertions to the contrary, I conclude that Superior both regularly solicits business and engages in a persistent course of conduct in Massachusetts within the meaning of the statute. See Noonan, supra at 92-93 (court found solicitation under §3(d) when out-of-state defendant regularly solicited business in forum for a two year period, telephoned forum, and traveled to Massachusetts at least two times). The record developed pursuant to jurisdictional discovery indicates that Superior has targeted Massachusetts customers since at least 1986 and has filled a number of orders for some 100 Massachusetts customers. Superior employees also admit to soliciting and marketing within the Commonwealth. Additionally, Superior’s web site listing its 800 telephone number, products, and prices is further evidence of regular business and solicitation in Massachusetts. See Hasbro, Inc. v. Clue Computing, Inc., 994 F.Sup. 34, 44 (D.Mass. 1997) (court found that maintaining web site, which was continuously accessible to Massachusetts residents, listed Massachusetts clients, and was purposely maintained as an advertisement, was regular solicitation satisfying §3(d)).
Superior asserts that its overall percentage of total sales derived from Massachusetts customers is insignificant and not “substantial revenue.” However, “it is well settled under Massachusetts law that substantial revenue is not an absolute amount, nor an absolute percentage of total sales.” Keds Corp. v. Renee International Trading Corp., 888 F.2d 215, 219 (1st Cir. 1989) (the sale of 600 pairs of shoes for $15,000 satisfies statute). All that is required is literal satisfaction of the statutory requirement. Heins v. Wilhem Loh Wetzlar Optical Machine GambH, supra, 26 Mass.App.Ct. at 21 n.5. In this context, Superior’s yearly revenues of several thousands of dollars, derived from the sale of products in Massachusetts, qualifies as substantial under §3(d).
The plaintiffs thus have satisfied their burden under §3(d). It is therefore necessary to determine *99 whether these contacts are sufficient to satisfy constitutional requirements of due process.
B. Constitutional Due Process
In order to establish personal jurisdiction over a nonresident defendant in a way consistent with constitutionally mandated due process, the defendant must either have “continuous and systematic activity, unrelated to the suit, in the forum state,” or certain “minimum contacts with the forum state” so that the exercise of jurisdiction does not offend “traditional notions of fair play and substantial justice.” Union Elec. Radio and Mach. Workers of America v. 163 Pleasant St. Corp., supra, 960 F.2d at 1088; International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The former confers general jurisdiction, the latter specific jurisdiction. Hasbro Inc. v. Clue Computing, Inc., supra, 994 F.Sup. at 44, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 & n.15 (1985). “The standard for evaluating whether contacts satisfy the constitutional general jurisdiction test ‘is considerably more stringent’ than that applied to specific jurisdiction questions.” Noonan, supra, 135 F.3d. at 93 quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984).
As indicated above, specific jurisdiction does not exist here since the plaintiffs’ claims do not “arise out of Superior’s contacts with the Commonwealth. Accordingly, what must be determined is whether Superior engaged in ’’continuous and systematic" activity in Massachusetts sufficient to establish general jurisdiction; and if so, whether it is fair and reasonable to compel Superior to defend itself in Massachusetts. Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). In assessing this second question of reasonableness, the court should focus on (1) Superior’s burden in appearing in the court; (2) the Commonwealth’s interest in hearing the suit; (3) the plaintiffs’ convenience and interest in effective relief; (4) the judicial system’s interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social policies. Burger King Corp. v. Rudzewicz, supra, 471 U.S. at 477 (Gestalt factors). “The Gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice.” Ticketmaster-New York, Inc. v. Alloto, 26 F.3d 201, 209 (1st Cir. 1994). “In very close cases, they may tip the constitutional balance.” Id. See id., at 210 (“We think . . . that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiffs showing [on minimum contacts], the less a defendant need to show unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]”). See also Donatelli, supra, 893 F.2d at 465 (“the criteria may work either to shrink the minimum contacts threshold thus facilitating the assertion of general jurisdiction or to defeat general jurisdiction entirely”).
The defendant cites to the Helicópteros case to support its assertion that Superior did not have “continuous and systematic” contacts with Massachusetts sufficient to establish general jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, supra, 466 U.S. at 418-19. In that case, the plaintiffs, residents of Texas, brought a wrongful death suit in a Texas state court against Helicol, a Colombian corporation, after the plaintiffs’ decedents crashed in a helicopter owned by Helicol. Id. at 410-12. In determining the nature of Helicol’s contacts with the State of Texas, the Court found that Helicol’s chief executive took a single trip to Texas for the purpose of negotiating a contract, Helicol accepted checks drawn on a Texas bank, Helicol purchased helicopter parts and accessories (over 80% of its fleet) from a Texas corporation for substantial sums of money, and sent pilots, management, and maintenance personnel to Texas for training in relation to its purchases of the helicopters and equipment. Id. at 416-18. The Court held that these contacts with Texas were not “continuous and systematic” and were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. Id. at 418-19.
Although Helicópteros set a benchmark in determining whether general jurisdiction exists, there are several key differences from the facts of this case. Unlike Helicol, which was an out-of-state buyer, Superior is an out-of-state seller which directly sells products to several Massachusetts companies. Furthermore, Superior has regularly solicited business in the forum state for several years. Compare Helicópteros, supra at 411 (the Court noted that Helicol never sold any product that reached Texas, never solicited business in Texas, and never had any employee based in Texas). Superior’s contacts with Massachusetts were based on more than “mere purchases occurring at regular intervals.” Id. at 418.
It is true that general jurisdiction satisfying the Due Process Clause is not always found when dealing with an out-of-state seller. See Noonan v. Winston Co., supra, 135 F.3d at 95 (two year business relationship between out-of-state seller and forum state held to be insufficient contacts to constitutionally authorize general jurisdiction); Glater v. Eli Lilly & Co., supra, 744 F. 2d at 217 (manufacturer who advertised, employed eight sales representatives to distribute information, and sold products to distributors in the forum was not subject to general jurisdiction). See also Donatelli v. National Hockey League, supra, 893 F.2d at 457 (insufficient contacts to establish general jurisdiction). Cf. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 572-73 (2nd Cir. 1996) (out-of-state seller found to have continuous and systematic contacts with the forum state even though seller owned no property in the state and exercised no control over its *100 in-state independent dealers, but forum state could not assert personal jurisdiction over the defendant after failing the reasonableness inquiry). Compare Provident National Bank v. California Federal Savings & Loan, 819 F.2d 434, 436 (3rd Cir. 1987) (court found continuous and systematic contacts between a California savings and loan association and Pennsylvania, the forum state, where some of association’s depositors were Pennsylvania residents, three Pennsylvania banks serviced $10.2 million of the association’s loans, and the association controlled a disbursement account with a Pennsylvania bank under which the association would wire funds daily).
This is a close case. Nevertheless, I conclude that Superior’s two decade relationship with customers in Massachusetts, generating millions of dollars of revenue, and Superior’s consistent and ongoing solicitation of Massachusetts customers is sufficient evidence of “continuous and systematic” contacts with the forum to satisfy due process under the Constitution. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., supra, 84 F.3d at 572-73.
Finally, unlike the Robertson-Ceco case just cited, I conclude on the record presented here that it is fair and reasonable to compel Superior to defend itself in Massachusetts. See Burger King Corp. v. Rudzewicz, supra, 471 U.S. at 477. The first Gestalt factor relating to the Superior’s burden in appearing in the Commonwealth weighs in favor of the plaintiffs. Id. Although Superior, a Texas corporation, would have to travel some distance to litigate in Massachusetts, the company conducts business all over the globe. The burden on the Superior is further diminished by its consistent practice of sending sales representatives to Massachusetts and its substantial business in this forum. Furthermore, Superior has not argued that a burden exists. See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994) (“this factor is only meaningful where a party can demonstrate some kind of special or unusual burden”). With respect to the second Gestalt factor, Massachusetts has an interest in this suit since the accident occurred in the Commonwealth and the plaintiffs are all residents of the State. See Burger King, supra, 471 U.S. at 477. For similar reasons, under the third Gestalt factor, it is more convenient for the resident plaintiffs to pursue this action in Massachusetts. Id. The plaintiffs are likely to get the most effective relief in this forum, since the crash involved Massachusetts residents and will likely involve witnesses and other evidence in this State. Again, the administration of justice also weighs heavily in favor of the plaintiffs as the locus of the tort, injured parties, and other evidence is centered in Massachusetts. Id. As to the final factor, the promotion of substantive social policy, this factor does not favor either party. Id.
The “Gestalt factors” taken together, weigh in favor of the plaintiffs and serve to “shrink the minimum contacts threshold,” thus facilitating the assertion of general jurisdiction. See Donatelli v. National Hockey League, supra, 893 F.2d at 465. In this close case, the factors “tip the constitutional balance” in favor of finding jurisdiction over the defendant. See Ticketmaster-New York v. Alioto, supra, 26 F.3d at 209.
For the foregoing reasons, the Superior’s motion to dismiss based on personal jurisdiction is denied.
II. Motion to Dismiss Counts XII and XIII of the Snyders’ Complaints Pursuant to Mass. R. Civ. P. 12(b)(6)
Superior also moves to dismiss counts XII and XIII of the Snyders’ complaints, asserting that Massachusetts does not recognize claims based on strict liability. The Snyder plaintiffs appear to agree, as they must, see Swartz v. General Motor Corp., 375 Mass. 628, 630 (1978), and state they are not opposed to dismissing Counts XII and XIII and pursuing the substance of these counts in their breach of warranty claims set out in Counts IV and V of the complaints. I believe this course of action should be followed. As the plaintiffs recognize, “amendments to the Massachusetts version of the Uniform Commercial Code make clear that the Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted byagreatmany other jurisdictions." Mason v. General Motors Corp., 397 Mass. 183, 189 (1986), quoting Back v. Wickes Corp., 375 Mass. 633, 640 (1978).
in. Motion to Dismiss G.L.c. 93A Claims Pursuant to Mass.R.Civ.P. 12(b)(6)
Superior also moves to dismiss the plaintiffs’ G.L.c. 93A claims on the basis that the underlying sale or transaction did not occur “primarily and substantially” in Massachusetts.[7]
Superior’s reliance on the standard requiring that the unfair or deceptive act or practice occur “primarily and substantially” within the Commonwealth is misplaced. That standard, which is specifically enumerated in G.L.c. 93A, §11, applies only to business-to-business sales and transactions. However, G.L.c. 93A, §9, which applies to the consumer plaintiffs in this case, does not require that the sale or transaction occur “primarily and substantially” within Massachusetts. Rather, jurisdiction under §9 is determined under the Massachusetts Longarm Statute. See M.C. Gilleran, The Law of Chapter 93A, §7:4 (1989 and Supp. 1999). In light of the personal jurisdiction analysis discussed above, Superior’s motion to dismiss the plaintiffs’ G.L.c. 93A claims should be denied.
ORDER
For the foregoing reasons, the defendant Superior Air Parts, Inc.’s motion to dismiss is ALLOWED with respect to Counts XII and XIII of the Snyders’ complaints, and is otherwise DENIED.

The parties dispute which contacts should be considered in the court's jurisdictional analysis. This court will only consider Superior contacts with Massachusetts up to and including the date the suit was filed. See Noonan v. Winston Co., 135 F.3d 85, 95 (1st Cir. 1998). Any reference to contacts after the 1997 filing of this case are only mentioned because of the inclusion of these contacts in customer fists and in fiscal year sales and revenue figures from a survey of data spanning several preceding years.

Plaintiffs' complaints assert jurisdiction under G.L.c. 223A, §3(a),(b), and (d). However, plaintiffs concede that jurisdiction in this case does not fall under §§3(a) or (b). (See PL Mem. at 8.) I agree: Because the Superior aircraft parts on the plaintiffs’ plane were not manufactured in Massachusetts, not sold to a Massachusetts resident, and were not installed in Massachusetts, the plaintiffs’ product liability claims against Superior do not arise from Superior's transactions in the Commonwealth. See G.L.c. 223A, §3(a).

The consolidated action brought by the Wilkersons’ estates and Anthony Lobello also includes G.L.c. 93A claims against Superior. Superior’s motion to dismiss does not specifically address these counts. Regardless, these claims should not be dismissed for the reasons discussed in the text.

ADS Aircraft Management, Inc. (aka ADS Flight Center), Daniels Aircraft International, Inc., Thomas R. Brouty, Thomas R. Brouty Aircraft Services, Inc., Textron Inc., Text-ron Lycoming, Inc., Avco Corporation, and Superior Air Parts, Inc.

Edwin M. Karp Jr., administrator of the estate of Brittany Marie Wilkerson Karp, and Anthony Lobello.

Audrey Snyder, administratrix of the Estate of James Snyder, Diane Snyder, administratrix of the Estate of Samuel Snyder, ADS Aircraft Management, Inc. (aka ADS Flight Center), Daniels Aircraft International, Inc., Thomas R. Brouty, Thomas R. Brouty Aircraft Services, Inc., Textron Inc., Textron Lycoming, Inc., Avco Corporation, and Superior Air Parts, Inc.