UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**PMH RESEARCH ASSOCIATES, LLC**

    **v.**                                   Civil No.  04-251-PB

**LIFE EXTENSION FOUNDATION
BUYERS CLUB, INC. et al.**

## MEMORANDUM AND ORDER

PMH Research Associates, LLC ("PMH") brings this action against Life Extension Buyer's Club, Inc. ("LEBC"), and Life Extension Foundation, Inc. ("LEF") claiming that LEBC and LEF misappropriated PMH's trade secrets. Invoking Federal Rule of Civil Procedure 12(b)(2), defendants move to dismiss this action for lack of personal jurisdiction.

## I. STANDARD OF REVIEW

When a defendant contests personal jurisdiction, the plaintiff bears the burden of demonstrating that a basis for jurisdiction exists. See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998); Rodriguez

v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). Because no evidentiary hearing has been held in the present case, I hold PMH to a prima facie standard. See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995) (citing United Elec. Radio and Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 43 (1st Cir. 1993) [hereinafter Pleasant St. II]).

To make a prima facie showing of jurisdiction, PMH may not rest on its pleadings. Rather, it must "adduce evidence of specific facts" that support jurisdiction. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995); Pleasant St. II, 987 F.2d at 44. In conducting my analysis, I take the facts proffered by PMH as true and construe them in the light most favorable to its jurisdictional claim. See Mass. Sch. of Law, 142 F.3d at 34; Foster-Miller, 46 F.3d at 145. I do not act as a fact-finder; rather, I determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriguez, 115 F.3d at 84 (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

While the prima facie standard is liberal, I need not "credit conclusory allegations or draw farfetched inferences."

Mass. Sch. of Law, 142 F.3d at 34 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).  Finally, I will consider facts offered by defendants, but only to the extent that they are uncontradicted.  See id.

## II. FACTS

### A. The Parties

PMH is a limited liability company formed under Nevada law. PMH develops and distributes ingredients that are used in nutritional supplements.  One of PMH's two members, Philip Hekimian, maintains PMH's principal office at his home in Windham, New Hampshire.  PMH's other member, Michael Halpern, maintains an office in Pennsylvania.

LEF is a non-profit corporation that seeks to extend the human life span through the promotion of scientific research. LEF funds its research primarily by charging membership fees and distributing nutritional supplements through LEBC, a for-profit corporation that shares common ownership with LEF.  LEF is a Florida corporation and LEBC is a Nevada corporation.  Both companies operate from the same Ft. Lauderdale, Florida office.

LEF has members throughout the United States.  It maintains a website and distributes <u>Life Extension Magazine</u>, a nationwide periodical published by a subsidiary of LEBC.  LEBC maintains a retail store in Ft. Lauderdale and distribution centers in Florida and New York.  It advertises supplements on LEF's site and in <u>Life Extension Magazine</u>.  It has also marketed LEF's supplements through mass mailings directed to a national audience.

Neither LEF nor LEBC has ever had offices in New Hampshire. While labels on some of the products that LEBC distributed in 1998 and 1999 referred to a Nashua, New Hampshire location, the only presence that it maintained in the state was a leased mailbox that it claims it has rarely used.

Since 1997, LEF and LEBC have relied on PMH and its principals, Hekimian and Halpern, to perform a variety of tasks. Among other things, LEBC depended on PMH and its principals to conduct research and perform studies concerning various chemical ingredients that were being considered for use in nutritional supplements to be sold by LEBC.  During this period, LEBC entered into numerous written and oral contracts with PMH or its

principals. Between 1997 and 2003, more than 100 telephone calls per year and faxes were exchanged between LEBC and PMH's New Hampshire office. PMH also developed between 50 and 100 purchase orders per year for LEBC at its New Hampshire office. At no point, however, did any LEBC employee ever travel to New Hampshire to conduct business with PMH.

B.    **The Current Dispute**

The current dispute concerns a protocol that PMH developed to study the efficacy of certain drugs and other substances in treating pancreatic cancer. In exchange for a share of any resulting profits, LEF agreed to fund a study that used the protocol. PMH developed the protocol in New Hampshire and negotiated its agreement with LEF over the telephone from PMH's New Hampshire office. PMH ultimately disclosed the protocol to LEF pursuant to this agreement.

After reaching its agreement with PMH, LEF negotiated an additional agreement ("Funding Agreement") with the University of Nebraska to fund a study using the protocol. LEBC subsequently entered into a non-disclosure agreement ("Non-disclosure Agreement") with the study's lead investigator, Dr. Parviz Pour.

Both agreements treat the protocol as if it were the property of LEF and LEBC rather than PMH. The Funding Agreement and the Non-disclosure Agreement were both negotiated in Florida and Nebraska.

PMH claims that the pancreatic cancer protocol is a trade secret and that LEF and LEBC are guilty of trade secret misappropriation because they have entered into contracts with the University of Nebraska and Dr. Pour that treat the protocol as their property rather than the property of PMH.

## III. DISCUSSION

For purposes of assessing personal jurisdiction over a nonresident defendant, "a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster, 26 F.3d at 204). Accordingly, I must determine whether jurisdiction is proper under both the New Hampshire long-arm statute and the due process requirements of the federal constitution. See id.; Foster-Miller, 46 F.3d at 144. The statute that applies to foreign corporate entities, see N.H. Rev. Stat. Ann. § 293-A:15.10 (Supp. 2004), has been interpreted to be

-6-

coextensive with federal constitutional limits on jurisdiction. See Sawtelle, 70 F.3d at 1388 (citing McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994)). As a result, "the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met." McClary, 856 F. Supp. at 55. I therefore proceed directly to the due process analysis.

The due process clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Sawtelle, 70 F.3d at 1388. The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42

F.3d 53, 60 (1st Cir. 1994).  A defendant cannot be subjected to a forum state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts.  Burger King, 471 U.S. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen, 444 U.S. at 299) (internal quotations omitted).  Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may assert authority over a defendant by means of either general or specific jurisdiction.  See Mass. Sch. of Law, 142 F.3d at 34 (citing Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990)); Foster-Miller, 46 F.3d at 144.  A defendant who has engaged in "continuous and systematic" activity in a forum state is subject to general jurisdiction in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities.  See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Donatelli, 893 F.2d at 462-63).  A court

-8-

may exercise specific jurisdiction, by contrast, only when the cause of action arises from, or relates to, the defendant's contacts with the forum. See id.; Pritzker, 42 F.3d at 60.

Here, PMH contends that defendants are subject to both general and specific jurisdiction in New Hampshire. I consider each claim separately. To ease the analysis, however, I treat defendants as one entity with shared contacts. Doing so does not affect my ruling. Even after combining their contacts, PMH still fails to allege facts that would justify imposing personal jurisdiction over either defendant.

## A. General Jurisdiction

As stated, a court may assert general jurisdiction over a defendant, even when the plaintiff's claim is not related to the defendant's forum-based conduct, only if the defendant has engaged in "the 'continuous and systematic' pursuit of general business activities in the forum state." Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984) (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448 (1952)); see also Helicopteros, 466 U.S. at 415-16; Mass. Sch. of Law, 142 F.3d at 34; Mary Twitchell, *The Myth of General Jurisdiction*, 101 Harv.

L. Rev. 610, 612 (referring to the general jurisdiction inquiry as "dispute blind").  In other words, although an exercise of general jurisdiction does not require relatedness, it does require that defendants' contacts with the forum state be much more extensive than the "minimum contacts" necessary to establish specific jurisdiction.  See Donatelli, 893 F.2d at 463 (noting that "'[a]lthough minimum contacts suffice in and of themselves for specific jurisdiction . . . , the standard for general jurisdiction is considerably more stringent'") (quoting Glater, 744 F.2d at 216) (alteration in original).

PMH argues that there are two separate contact categories that establish that defendants' relationship with New Hampshire is "continuous and systematic."  The first encompasses PMH's work in New Hampshire for defendants.  The second encompasses defendants' separate marketing and distribution presence in New Hampshire.  Having examined the facts that pertain to each category, I conclude that PMH is unable to prove that defendants had a "continuous and systemantic" relationship with this state.

### 1.  PMH's In-State Status as a Jurisdictional Contact

PMH's primary argument is that general jurisdiction exists because it has performed the bulk of the contractual obligations

it owed defendants from PMH's New Hampshire office.  The first issue, then, is whether it is proper to impute PMH's activities in New Hampshire to defendants.  I hold that it is not.

I held in a prior case that if the "the forum plaintiff's decision to perform [his] contractual obligations within [his] own forum state is totally unilateral," see Elliott v. Armour Holdings, Inc., 2000 DNH 12, 29 (January 12, 2000) (citing Command-Aire Corp. v. Ontario Mech. Sales and Serv. Inc., 963 F.2d 90, 94 (5th Cir. 1992)), then defendant's relationship with the plaintiff while it performed those obligations ordinarily will not be sufficient to establish general jurisdiction. Elliott 2000 DNH 12 at 36; see also Skillsoft Corp. v. Harcourt Gen., Inc., 146 N.H. 305 (2001) (holding that it is "axiomatic . . . that the plaintiff's business practices cannot contribute to the defendants' contacts with New Hampshire toward establishing personal jurisdiction").

In Elliott, a resident plaintiff sought to prove that work he performed for a nonresident defendant in a New Hampshire home office should be counted as part of the contact calculus for the purpose of determining jurisdiction.  2000 DNH 12 at 36.  I disagreed.  I held that the plaintiff's work was "a unilateral

action that does not constitute a purposeful 'minimum contact' with New Hampshire." I therefore concluded that the plaintiff's performance "cannot be considered in the calculation of general jurisdiction." Id.

This case presents a similar fact pattern. PMH and its principals have had a close, continuous, contractual relationship with defendants since 1997. PMH has done research for defendants, has communicated extensively with defendants, and has even sold products on defendants' behalf. Much, if not most of these activities have taken place in New Hampshire. The problem for PMH, however, is that the decision to perform in New Hampshire was PMH's alone. Defendants did not send PMH to New Hampshire to set up shop, nor did they insist that PMH perform any activities there. Indeed, all of the facts suggest that the locus of performance was unilaterally determined by PMH. In this respect, then, PMH is no different from the plaintiff in Elliott. Accordingly, PMH must rely on a separate set of contacts to establish general jurisdiction.

### 2. Defendants' Marketing and Distribution Activities as Jurisdiction Contacts

PMH next argues that defendants did enough business in New

Hampshire to support a finding of general jurisdiction. In _Seymour v. Parke, Davis & Co._, 423 F.2d 584 (1st Cir. 1970), a plaintiff claimed that New Hampshire courts had general jurisdiction over a corporate defendant because the defendant employed six New Hampshire salesmen who visited physicians, hospitals, and retail pharmacies to disseminate product information and take orders. _Id._ at 585. The court concluded that when "defendants' only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume jurisdiction." _Id._ at 587.

The court reached a similar conclusion in _Glater v. Eli Lilly & Co._, 744 F.2d 213 (1st Cir. 1984). There, the court held that there was no general jurisdiction over the defendant despite the fact that it employed New Hampshire sales representatives and advertised its pharmaceutical products in trade journals that circulated in New Hampshire. _Id._ at 215-217. The court specifically ruled that in-state magazine circulation, by itself, was not a strong enough contact to justify imposing personal jurisdiction upon the defendant. _Id._ at 216.

If general jurisdiction could not be imposed in _Seymour_ and _Glater_, it would be inappropriate to impose it here. Unlike in

-13-

those cases, defendants have not employed sales people to enter the state in order to market their goods and services. Rather, defendants' activities in New Hampshire are limited to the distribution of an undetermined quantity of nutritional products, the sale of an undetermined number of memberships, and the distribution of Life Extension Magazine within the state. These activities do not qualify as "continuous and systematic" behavior within the jurisdiction. Seymour, 423 F.2d at 587.

Other than those contacts addressed in the prior sections, defendants are alleged to have no other contacts with New Hampshire. They own no property here, they are not organized or incorporated here, they have not (until now) litigated claims here, nor are they registered to do business here. Under these circumstances, it would violate notions of fairness incorporated into the due process clause to force them into court on a theory of general jurisdiction.

## B.   Specific Jurisdiction

PMH alternatively argues that defendants should be subject to this court's specific jurisdiction. The First Circuit has developed a tripartite test for determining whether an exercise

-14-

of specific jurisdiction comports with due process.  The analysis consists of an inquiry into (1) relatedness, (2) purposeful availment, and (3) reasonableness.  See Mass. Sch. of Law, 142 F.3d at 35; Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996).  An affirmative finding on each of these elements is required to support an assertion of specific jurisdiction.  See Phillips Exeter, 196 F.3d at 288.

Because I conclude that plaintiff cannot satisfy either the relatedness or purposeful availment components of the specific jurisdiction test, I analyze only these two requirements.

### 1.    Relatedness

Questions of specific jurisdiction are always tied to the particular claims asserted.  Phillips Exeter, 196 F.3d at 289. In this case, the cause of action asserted is trade secret infringement.  Though trade secrets are protected by an independent body of law, that body is most closely analogous to the law of torts.  See ROBERT P. MERGES, PETER S. MENELL, & MARK A. LEMLEY, INTELLECTUAL PROPERTY IN THE NEW TECHNOLOGICAL AGE 29-30 (2003) (describing how trade secret law developed out of tort law).

When determining whether specific jurisdiction exists, then, I impose the same test as would be applied were this a tort case.

This test requires that I "probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter, 196 F.3d at 289. In other words, I must look at the particular facts that caused the trade secret infringement and ask whether those facts are related to the State of New Hampshire.

PMH alleges that infringement occurred during defendants' contract negotiations with the University of Nebraska and Dr. Pour. It is undisputed, however, that these negotiations took place in Nebraska and Florida. PMH nevertheless presents two arguments in an effort to demonstrate relatedness. First, it points to the fact that the protocol was produced by PMH in New Hampshire. See Plaintiff's Memorandum of Law Opposing Defendants' Motion to Dismiss (Doc. No. 9) at 8 ("Plaintiff's Opposition Brief"). This fact, PMH argues, supplies the connection to New Hampshire necessary to satisfy the First Circuit's jurisdictional test. Id. It is not the creation of a trade secret, however, that determines where jurisdiction is properly imposed. Instead, it is the site or sites where activity that caused the breach occurred. United States v. Swiss

-16-

American Bank, Ltd., 274 F.3d 610, 622 (1st Cir. 2002) (discussing tort claim); Phillips Exeter, 196 F.3d at 289 (discussing jurisdiction over a breach of contract claim). PMH's claim that New Hampshire was the state in which the protocol was developed therefore does not bear on the question at hand.

PMH next argues that it is enough that it suffered injury in New Hampshire. See Plaintiff's Opposition Brief at 9. The First Circuit, however, has rejected this argument as a basis for establishing jurisdiction. In Phillips Exeter, the court considered whether a trust, formed and located in Florida, that failed to pay trust funds to a New Hampshire school, could be sued in this district for breach of fiduciary duty. 196 F.3d at 291. Despite the fact that the plaintiff school felt the effects of the breach in New Hampshire, the court held that defendant could not be tried here. Id. According to the court, the injury that resulted from the withholding of payment was "merely an in-forum effect of an extra-forum breach, and therefore, inadequate to support a finding of relatedness." Id.

The same can be said of PMH's claim in this case. For jurisdictional purposes, the in-forum harm it suffered as a

result of defendants' alleged trade secret violation is no different from the in-forum harm suffered by Phillips Exeter. I cannot, therefore, consider it a contact for the purposes of determining whether this court has specific jurisdiction.

PMH has otherwise alleged no facts that establish a causal nexus between New Hampshire and PMH's cause of action. I therefore hold that the first element of the tripartite test has not been met.

### 2.   **Purposeful Availment**

The second prong of the tripartite test requires that I determine whether defendants have purposefully availed themselves of the privilege of conducting activities in New Hampshire. See Burger King, 471 U.S. at 475; Phillips Exeter, 196 F.3d at 288; Nowak, 94 F.3d at 712-13. This element focuses on "whether a defendant 'has engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). Its function is to ensure "that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Id. (quoting Keeton, 465 U.S. at 774).

-18-

Voluntariness and foreseeability are the cornerstones of the purposeful availment requirement.  See id.; Ticketmaster, 26 F.3d at 207.  The first question, then, is whether defendants have voluntarily availed themselves of New Hampshire's forum-based benefits.  The answer, again, is no.

As I stated earlier, if "the forum plaintiff's decision to perform [his] contractual obligations within [his] own forum state is totally unilateral it cannot be viewed as purposeful on the part of the nonresident . . . ."  See Elliott, 2000 DNH at 29.  Again, defendants' relationship with New Hampshire is primarily driven by PMH's decision to perform here, a decision defendants did not dictate.  Thus, defendants have not voluntarily taken advantage of New Hampshire's privileges for jurisdictional purposes simply by claiming to do business with a company that is located within this jurisdiction.

Likewise, defendants could not have foreseen that this case would be tried in New Hampshire.  They have few contacts with the state, and next-to-none that can be appropriately attributed to the cause of action at issue.  I therefore conclude that defendants have not purposefully availed themselves of New

Hampshire's forum-based privileges. PMH has thus failed to meet the requirements of the second prong of the First Circuit's test.

### III. __CONCLUSION__

Based on the foregoing discussion, I conclude that this court lacks personal jurisdiction over the defendants. Accordingly, I grant defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 5). The clerk shall enter judgment in accordance with this order and close the case.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

December 22, 2004

cc:  Richard B. McNamara, Esq.
     Alexander J. Walker, Esq.